1  Your Name:   George Jarvis Austin (CA Business Invitee, Client, or Customer)

2  Address:   2107 Montauban Court, Stockton Ca, 95210

3  Phone Number:   209.915.6304 ;

4  Fax Number:   NA

5  E-mail Address:   georgejarvisaustin@gmail.com

6  Pro Se Plaintiff

**FILED**

JUL 11 2024

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11  George Jarvis Austin (CA Business Invitee, Client, Customer)

Case Number    [leave blank]

12          Plaintiff,

**C24-04185 JCS**

13      v.

**COMPLAINT**

14  ABC LEGAL SERVICES, LLC, et. al. Defendants.

15          Defendant.

DEMAND FOR JURY TRIAL

16                          Yes ✔    No ☐

17

18                      **PARTIES**

19  1.  Plaintiff. [Write your name, address, and phone number. Add a page for additional plaintiffs.]

20  Name:   **George Jarvis Austin**

21  Address:   **2107 Montauban Court, Stockton Ca, 95210**

22  Telephone:   **209.915.6304 ;**

23

24  2.  Defendants. [Write each defendant's full name, address, and phone number.]

25  Defendant 1:

26  Name:   **ABC LEGAL SERVICES, LLC, et. al. Defendants.**

27  Address:   316 W 2nd St, Downtown Los Angeles, CA 90012; 1099 Stewart St.Suite 700Seattle, WA 98101

28  Telephone:   **(206) 521-9000; (800) 736-7295**

COMPLAINT                Page ___ of ___                        UPDATED 6/2024

1    Defendant 2:

2    Name:          et. al. (shall add via e-filing to save valuable Clerk's time )

3    Address:       _____

4    Telephone:     _____

5    Defendant 3:

6    Name:          _____

7    Address:       _____

8    Telephone:     _____

9

10                              **JURISDICTION**

11   Usually only two types of cases can be filed in federal court, cases involving "federal questions"

12   and cases involving "diversity of citizenship." Check at least one box.

13   3.  My case belongs in federal court

14       ☑ under <u>federal question jurisdiction</u> because it involves a federal law or right.

15         Which federal law or right is involved?

16       42 USC 1981 right to make contract, Equal Pro, Due Process; US Const. 13th; 14th Amend;   Section 43(a) of the Lanham Act

17       False Advertising (Lanham Act) ;CA Civ. Code 51, 51.5, 52; Deceit; Negligence

18       ☐ under <u>diversity jurisdiction</u> because none of the plaintiffs live in the same state as any of the

19   defendants <u>and</u> the amount of damages is more than $75,000.

20

21                                 **VENUE**

22   The counties in this District are: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin,

23   Mendocino, Monterey, Napa, San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo, or

24   Sonoma.  If one of the venue options below applies to your case, this District Court is the correct

25   place to file your lawsuit.  Check the box for each venue option that applies.

26   4.  Venue is appropriate in this Court because:

27       ☑ a substantial part of the events I am suing about happened in this district.

28       ☑ a substantial part of the property I am suing about is located in this district.

1  ☑ I am suing the U.S. government, federal agency, or federal official in his or her official

2     capacity <u>and</u> I live in this district.

3  ☑ at least one defendant is located in this District and any other defendants are located in

4     California.

5

6                          **INTRADISTRICT ASSIGNMENT**

7  This District has three divisions: (1) San Francisco/Oakland (2) San Jose; and (3) Eureka-

8  McKinleyville.  First write in the county in which the events you are suing about happened, and

9  then match it to the correct division. The San Francisco/Oakland division covers Alameda, Contra

10 Costa, Marin, Napa, San Francisco, San Mateo, and Sonoma counties.  The San Jose division

11 covers Monterey, San Benito, Santa Clara, Santa Cruz counties.  The Eureka-McKinleyville

12 division covers Del Norte, Humboldt, Lake, Mendocino counties, only if all parties consent to a

13 magistrate judge.

14 1.  Because this lawsuit arose in <u>San Francisco/Alameda</u> County, it should be assigned

15    to the <u>San Francisco/Oakland</u> Division of this Court.

16

17                          **STATEMENT OF FACTS**

18 Write a short and simple description of the facts of your case. Include basic details such as <u>where</u>

19 the events happened, <u>when</u> things happened and <u>who</u> was involved. Put each fact into a separate,

20 numbered paragraph, starting with paragraph number 6. Use more pages as needed.

21 See detailed, organized, numbered, complaint, with quick reference of controlling precedent.

22

23

24

25

26

27

28

**COMPLAINT**                    Page ___ of ___                    UPDATED 6/2024

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CLAIMS**

2

**First Claim**

3  Name the law or right violated: _See detailed, organized, numbered, Complaint_

4  Name the defendants who violated it: _See detailed, organized, numbered, Complaint_

5  Explain briefly here what the law is, what each defendant did to violate it, and how you were

6  harm. You do not need to make legal arguments. You can refer to your statement of facts.

7  See detailed, organized, numbered, complaint, with quick reference of controlling precedent.

8  _____

9  _____

10  _____

11  _____

12  _____

13  _____

14  _____

15  _____

16  _____

17  _____

18  _____

19  _____

20  _____

21  _____

22  _____

23  _____

24  _____

25  _____

26  _____

27  _____

28  _____

1

<u>See Complaint</u> **Claim**

2   Name the law or right violated: ___See detailed, organized, numbered, Complaint___

3   Name the defendants who violated it: ___See detailed, organized, numbered, Complaint___

4   See detailed, organized, numbered, complaint, with quick reference of controlling precedent.

5   _____

6   _____

7   _____

8   _____

9   _____

10  _____

11  _____

12  _____

13  _____

14  _____

15  _____

16  _____

17  _____

18  _____

19  _____

20  _____

21  _____

22  _____

23  _____

24  _____

25  _____

26  _____

27  _____

28  _____

1

**DEMAND FOR RELIEF**

2  State what you want the Court to do.  Depending on your claims, you may ask the Court to award

3  you money or order the defendant to do something or stop doing something.  If you are asking for

4  money, you can say how much you are asking for and why you should get that amount, or

5  describe the different kinds of harm caused by the defendant.

6  See detailed, organized, numbered, complaint, with quick reference of controlling precedent.

7

8

9

10

11

12

13

14

15

16

**DEMAND FOR JURY TRIAL**

17  Check this box if you want your case to be decided by a jury, instead of a judge, if allowed.

18  ☑ Plaintiff demands a jury trial on all issues.

19

20  Respectfully submitted,

21

22  Date:  **7/4/24**        Sign Name:

23  Print Name:  George Jarvis Austin

24

25

26

27

28

COMPLAINT                  Page ___ of ___               UPDATED 6/2024

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE JARVIS AUSTIN, Plaintiff<br>(*CA Business Invitee, Customer, or Client*), | **OPENING COMPLAINT** In honor of the Civil Rights Act of 1964; (*5 Years after passage of CA's 1959 <u>Unruh Act</u> & in honor of <u>Unruh Act</u> as well*); Full filing fee paid on site. |

v.

<u>ABC LEGAL SERVICES, LLC</u> (202002910199; *per California Secretary of State.*)), et. al. Defendants.

Case No. **TBA**

**George Jarvis Austin, Plaintiff (Self-represented)**
**2107 Montauban Ct., Stockton, CA**
**209.915.6304,**
**georgejarvisaustin@gmail.com**

**Note:  Mr. George Jarvis Austin is an *injured* Black male Self Represented Northern District, Ninth Circuit, Litigant, filing complaint(s) about ABC Legal's *ongoing* 1. <u>42 USC 1981</u>, Equal Protection, Due Process  2. <u>Unruh Act</u> 3. False Advertising Section 43(a) of the Lanham Act 4. Deceit, False Promises, Misrepresentations, Omissions and Actual Fraud (with Malice) 5. Negligence violations of his rights ;  As a Pro Se Litigant, and individual person, Mr. Austin upholds, and reminds of California licensed Legal Service Provider, ABC Legal's, ongoing duty, of non-discriminatory, Due Process and Equal Protection affirming, service for all people, especially those expressly listed classes of persons (I.e. Black men) of the 13th, 14th, and 15th Amendments throughout the litigation, or settlement, phases of this legal process with *$5-$10* million *minimum* Demand depending on structure, context and timing).**

NOTE: Mr. Austin's (Plaintiff's, self-represented with limited resources) technology is not currently allowing the showing of line numbering although he has repeatedly attempted to correct the technological issue (it is unintentional, and shall be corrected as soon as able)  Erickson v. Pardus, 551 U.S. 89, 94 (2007)) "a pro se complaint, .. must be held to less stringent standards than formal pleadings drafted by lawyers.")

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

### INTRODUCTION; PREFACE (*Interwoven Public-Private Corruption*).

Early in Mr. Austin's learnings and development Kathleen McGovern, as a US

Department of Justice Supervising Litigation Chief, and White Collar- Corruption

Expert taught Mr. Austin that Public Corruption is far and away the leader in

White Collar criminal prosecutions (*i.e. judges, other elected and appointed public*

*officials*), and many times are interwoven with some private actor(s) seeking

advantage, *greedily*.  Greed not only is a powerful motivator, but *often* blinds the

vision of the illegal actors (blind spots prosecutors, or plaintiffs, utilize to bring

justice).  DOJ Litigation Chief McGovern utilized an extremely practical approach

to teach Mr. Austin *how to:* a. effectively build a case b. gather material evidence c.

proactively utilize a variety of techniques to induce essential disclosures of key

witnesses, information, and leads d. read between the lines of public and private

actors to discern acts that further civil, or criminal, conspiracies e. effectively

recognize the typical *'tells,'* and patterns, of conspirators, and f. utilize some public

and private remedies in the interests of those victimized by both powerful public

and private white collar illegal actors (*as well as some other inside baseball*).   The

wisdom-instruction DOJ Litigation Chief McGovern provided to Mr. Austin was

extraordinarily valuable in this case especially as ABC Legal does business with

DOJ.  Mr. Austin is extraordinarily surprised at just how open ABC Legal

agents-officers are in their openly conspiratorial, & illegal conduct (*with multiple*

*overt admissions, written direct evidence, paper trails, documentation proving not*

*only the violations themselves, but illegal intent, mens rea, etc.*) almost as if they

wanted to be sued, or prosecuted.  No need for hero ball, just the simple plays,

taking what the defense is providing (*wide open lanes*).  Mr. Austin obliges, and

abides.

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

# TABLE OF CONTENTS

Introduction                                                           **1.**

Argument Summary                                          **2.**

Photo Affidavits                                                  **3.**

Facts                                                                       **5.**

Complies with <u>Rule 8</u>; 'Original' Jurisdiction    **38.**

Argument                                                             **42.**

## Argument Summary (Causes of Action)

1. ABC Legal violates sec. 1981, Equal Protection, & Due Process, in concert with Susan Illston, Donna Ryu, Trina Thompson, Edward Chen, Richard Seeborg, Saundra Brown Armstrong, Maxine M. Chesney, Alex G. Tse, William Alsup, Edward J. Davila, Rita F. Lin & Yvonne Gonzales Rogers & is currently violating Mr. Austin's rights, as a Black man, business invitee, customer, and litigant, to make service of process contracts, and receive non-discriminatory service, per <u>42 USC 1981</u> under <u>13th Amendment</u>, Equal Protection, Due Process ABC Legal by its impermissible (and 'negative') use of race, or derogatory racial stereotypes, (and perhaps gender), as a Black man, to his detriment, and treating him as an inferior due to his race, compared to similarly situated non-Black male, or White, customers, and service of contract offerees, repeatedly (refusing-violating basic, foundational tenets, duties and rights ABC Legal publicly espouses for ALL CA Litigants regardless of race).

2. ABC Legal  is currently violating Mr. Austin's rights, Mr. Austin's rights, as a Black man, California business invitee, customer, and litigant, to make service of process contracts, and receive non-discriminatory service, per Unruh by its impermissible (and 'negative') use of race, or derogatory racial stereotypes, 200+ outright refusals of service, and blackballing. ABC Legal in fact is promulgating an anti-Black male caste system policy and practice.to illegally deprive Mr. Austin, and Black men, of their rights.

3. ABC Legal is falsely advertising essential, Constitutionally required, and material elements of service offerings to overtly deceive Black male litigants, when in fact promulgating an anti-Black male caste system policy and practice.to illegally deprive Mr. Austin, and Black men, of their rights.

4. ABC Legal is making material misstatements, materially omitting, overtly deceiving, and misrepresenting in an *ongoing* malicious pattern of deceit to illegally deprive Mr. Austin of his rights (economic and otherwise).

5. ABC Legal is currently negligent in violation of multiple duties owed Mr. Austin

**Relief** : **$5- $10 Million** *Minimum* Demand, as well as Injunctive (and other relief).

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

You Know, Kindergarten Is Like The Ocean. You Don't Want To Turn Your Back On It."
**Ms. Joyce (Penelope Ann Miller) to Mr. Kimble (Arnold Swarzenegger), Kindergarten Cop, 1990**

"It doesn't matter what you say you believe - it only matters what you do."
**Robert Fulghum, All I Really Need to Know I Learned in Kindergarten**







George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

"**Cinque** : Ens. : [ Covey translating for Cinque in Mende]  You are a chief.

**President John Quincy Adams** : I was a chief. Yes....

**Cinque** : [in Mende]  Is he going to help? He has far many more questions than answers....

**President John Quincy Adams**: Cinque, look. *I'm being honest with you. Anything less would be disrespectful*...

**Cinque**: (speaking in Mende / Ens. Covey translating) We won't be going in there alone.

**President John Quincy Adams**: Alone? Indeed not. We have right at our side. We have righteousness at our side. We have Mr Baldwin over there.

**Cinque**: (speaking in Mende / Ens. Covey translating) I meant my ancestors. I will call into the past, far back to the beginning of time..... I will reach back and draw them into me. And they must come, for at this moment, I am the whole reason they have existed at all."
https://m.youtube.com/watch?v=y8Jkls3xgvg
-   **Cinque (Djimon Hounsou) and President John Quincy Adams (Anthony Hopkins) conversation before winning Supreme Court Argument, and Case:** *The United States v. the Amistad, 40 U.S. 518 (1841), Amistad,* **Movie by Steven Spielberg**

"Freeing yourself was one thing, claiming ownership of that freed self was another....To the sixty million or more, ...Beloved"
-   **Toni Morrison**

"I come as one, but I stand as 10000 to the 10th power!"
- *(I, George Jarvis Austin, happened to be sitting next to both Oprah and Gayle —front row next to Gayle in red, Myself in the gray suit—, before and after she gave this speech and spoke with her during commercial breaks on the depth of meaning for that particular award, and context for that speech and after learning, and listening, a bit more adopted that wisdom within myself).*
https://m.youtube.com/watch?v=wqJ7hmYhBMg
-   **Oprah Winfrey, Hall of Fame Acceptance Speech,** *36th Annual NAACP Image Awards,* **2005**

**Maya Angelou to Tupac:** "May I speak with you?....Do you know how important you are?  Did you know You're the best we have, and We need you desperately? Did you know that our people (*fought and*) stood on auction blocks for you?  Did you know we got up before sunrise, and slept after sunset so you could be alive this day?  Did you know our ancestors decided they would stay alive despite all this? Did you know they laid in their own, and others, excrement, urine, menstrual flow, feces, and filthy hatches of slave ships to stay alive for you?  When was the last time someone reminded you're more valuable than you can imagine?".....
("... *I talked to him and he calmed down. Later, when he wept, I wiped his face with my hands because I didn't have a napkin or handkerchief. Then we turned back to our location. I went to my trailer and Janet Jackson came*")
**Janet Jackson with Maya Angelou,** "Dr. Angelou, I can't believe you actually spoke to Tupac Shakur." I said, "Who is that?" I didn't know six pack or eight pack.... I didn't know who he was because in my age group his name didn't register"
-   **Maya Angelou, with Tupac Shakur, then with Janet Jackson, on set of** *Poetic Justice,* **directed by John Singleton , Classic, 1993** https://m.youtube.com/watch?v=rye1jb98LSA
httpsm.youtube.com/watch?v=gCDm6UGQSBU

4:7 Wisdom is the principal thing; therefore get wisdom:
and with all thy getting get understanding.
3:13 Blessed are those who find wisdom,  those who gain understanding,
3:14 for she is more profitable than silver and yields better returns than gold.
-   **Proverbs, 4:7, 3:13-14**

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

# Facts

23:   "Woe to you, teachers of the law and Pharisees *(legal experts; practitioners of the law)*, you hypocrites!
You give a tenth of your spices—mint, dill and cumin.
But you have neglected the more important matters of the Law— Justice, mercy and faithfulness.
You should have practiced the latter, without neglecting the former.

24:   You blind guides! You strain out a gnat *[consuming yourselves with miniscule matters; minutiae.]*
But, swallow a camel *[ignoring and violating the essential precepts, and principles]*.

25:   Woe to you,, scribes and Pharisees *(legal experts; teachers and practitioners of the law)*, you hypocrites!
You clean the outside of the cup and dish, but inside they are full of greed (corruption) and self-indulgence.

26:   Blind Pharisee *(legal experts; teachers and practitioners of the law)*! First clean the inside of the cup and dish,
so that the outside may become clean as well.

27:   Woe to you, scribes and Pharisees  *(legal experts; teachers and practitioners of the law)*, you hypocrites!
You are like whitewashed tombs, which look beautiful on the outside,
But, on the inside are full of dead men's bones and every kind of impurity....

-   **Matthew 23:23-27; - www.britannica.com/biography/Jesus/Scribes-and-Pharisees** *(Jesus - Messiah, Scribes, Pharisees | Britannica....Scribes and Pharisees of Jesus....In the 1st century, scribes and Pharisees were two largely distinct groups, though presumably some scribes were Pharisees. ...Scribes had knowledge of the law and could draft legal documents (contracts for marriage, divorce, loans, inheritance, mortgages, the sale of land, and the like). Every village had at least one scribe.....Pharisees were...Like the scribes, they were also well-known legal experts: hence the partial overlap of membership of the two groups. ..[Many scribes became interpreters of the law as members of the Sanhedrin, which was the highest legal, judicial and administrative body that governed]...)*

It has also been observed that the "truth rarely catches up with a lie."
-   **Gertz, 418 U.S. at 344 n.9, 94 S.Ct. 2997**

If you can wait and not be tired by waiting,
    Or being lied about, don't deal in lies,
Or being hated, don't give way to hating,
    And yet don't look too good, nor talk too wise
*(Proverbs warns of winks, their smiles hide the lies*
    *Let your yay be yay, then no need to surmise*
*Deceit seduces with sweet, but ends in its own demise*
    *For a loaf of bread, a whorish soul is fed*
*The wicked act as friends, but work as spies*
    *Siblings born for adversity, friends love at all times*

*How Devious to violate a Black litigant's 13th, sec 1981, and Unruh rights; pre-textual lies*
    *Malicious harm as 14th, Golden Standard, publicized www.abclegal.com /states/california*
*Violating Equal Protection, Due Process, Disparate Treatment, standardized*
    *When ABC Legal's violations are clear; black letter law, no need to improvise*
*Lanham act violations easily detected, material elements of service, falsely advertised*
    *Falsely advertising equal access to justice, with 200+Unruh violations & on the rise*
*Dishonest scales, Detested, pride's avarice, lust of the eyes*
    *Bold as a lion, Just, Goliath cut down to size*
*To keep one's peace in the midst of deceit, is a secret of the wise*
    *Seek first to Understand, Myopic Egotism makes hard to compromise*
*Wisdom is Better Than Strength, although the wise & poor maybe despised*
    *Ecclesiates, Better than shouts of rulers of fools, are quiet words of the wise*
*Devil's Advocate "Vanity is my favorite sin" because its ability to hypnotize -*
*www.forbes.com/sites/luisromero/2021/06/21/vanity-the-devils-favorite-sin-and-leaderships-worst-enemy/?sh=2
4a1b05d114f*

*Vain is a net in sight of any bird, traps hide from the eyes*
*I know why the caged bird sings, doubtless dreams materialize*
    *Body locked but can't trap my mind, in darkness see via mind's eyes*
*David in sheep dung, Joseph in the pit, leadership not yet fully realized*
    *Speak up for those who cannot, while seeing through a child's eyes*
*Jesus asked did you feed, clothe, visit, those in need?; He didn't hypothesize*
    *Separate the wheat; chaff, judge by Corinth or Galatia fruit, not criticize*
*Samson lusted for trust, Delilah pretended to empathize*

George Jarvis Austin, (Self-represented)
2707 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

> *Joseph; Job, shined in adversity, disciplined mind, tongue, single eyes*
> *Full of light, who they were in secret set them apart among the wise*
> *Honorable leadership listens for the oppressed or poor's cries*
> *Deliberate indifference toward disparate treatment equals same shoe; same size*
> *Run down shoes, worn with scorn, malice cannot hide from Justice's eyes*
> *A haughty look, gossip, lies are Vehemently despised*
> *Begin with end in mind, holes lead to ships capsized*
> *Pride precedes a fall, Titanic didn't sink because iceberg unrecognized*
> *Humility before honor, integrity, Character is the prize*
> *Be wise, A wolf is still a wolf even in a sheep's disguise)*
> -   **Kipling, IF (*with extra stanza by me, George Jarvis Austin*)**

1.     Beginning July 2022, Mr. Austin sought service & to make contract for service of process with ABC Legal Services, Inc. www.bloomberg.com/profile/company/0006142D:US#:~:text=ABC%20Legal%20Services%2C%20Inc.,customers%20in%20the%20United%20States (*ABC Legal Services, Inc. provides commercial services. The Company offers court filing, messenger and document retrieval, investigation, and other related services. ABC Legal Services serves customers in the United States*). Mr. Austin sought service as a Northern District, Ninth Circuit, civil litigant, but was met with facially discriminatory conduct (200+ outright denials of service and contract violating the face of sec. 1981, Civ. Code 51, 51.5, 52), pre-text, and deceit in that time frame until now June 2024.

**Mr. Austin believes what ABC Legal Services, Inc. shows him, repeatedly.**

2.     As an 80s baby, when Mr. Austin was born, for the first week after his birth he refused to open his eyes.  Nothing was wrong.  His vision, health, perfectly fine, but as a baby Mr. Austin decided he wasn't ready to open them, yet.  Eyes Wide Shut. However, that's the last time, in Mr. Austin's life, when presented with new information, data, or observation that he would keep his eyes shut.

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

  

Instead, if someone shows they are *racist*, he believes them. If they show they intend to treat him in an *inferior manner* compared to similarly situated others, he believes them. If they *wish him harm*, not well, by their conduct he believes them. If they *facially discriminate against him*, and *refuse to make service of process contracts* (in violation of California-Federal law), he believes them. If they repeatedly show, and expressly admit, they *presume and operate by derogatory* anti-Black racist *stereotypes* of Mr. Austin, *in words and conduct over 200+ instances*, then he believes them. If they feel comfortable *engaging in open deceit*, fraud, misrepresentations and omissions despite annually certifying under penalty of perjury to conduct business according to precise guidelines, he believes them. If they *intend to reduce* his, or other Black peoples, *status* through *trying to normalize illegal anti-Black conduct* in direct violation of the law, and the express duties owed him, he believes them. When ABC Legal Services, Inc. *continues* to go out of their way (breaking their normal, self described, protocol) to disrespect and violate Mr. Austin in every illegal way possible that a Legal Service company, in a process serving context, can to Black man, self represented litigant in California, *he believes them.*

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

3.      Of course, A Party can legally represent (*and advocate for*) themselves even under current law with the ways and means now mandatory, but cannot act as an attorney 'for another' until bar certified in the respective State, or Jurisdiction.  See 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally ...., by the rules of such courts, respectively, are permitted to manage and conduct causes therein.....Current through P.L. 118-14 (published on www.congress.gov on 09/22/2023) Section 1654 - Appearance personally..")  Thus, Mr. Austin, as a self represented litigant, did all steps by himself as an unrepresented party, including seeking service, and contracts, for service of process on legally filed, current, Federal civil cases.  Mr. Austin is *still* recovering from severe injuries causing physical disability both in the workplace at Tesla, and a separate car accident creating strains on every part of life, study (Straight A's, and A+'s last nine semesters), healing process and employment (working more than full time while representing himself (self-represented), and notes in advance his likely need for physical ADA Accommodation(s) until fully healed (*as physical injury causing temporary disability is creating additional challenges, and constraints, with caseload responsibilities similar to that of a corporate law firm associate, but done Pro Se (self represented) without the structural supports of research departments, information tech, paralegals, legal secretaries, nor a law degree, nor law license, or corporate law expenditure accounts.*)  Contextually, it's important to note *Mr. Austin is still healing from ongoing severe physical injuries that have been very slow to recover due to the unanticipated severity of his soft tissue injuries).  Mr. Austin also reminds to be mindful of Erickson v.*

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

*Pardus mandate(s), especially in this context. see* Erickson v. Pardus, 551 U.S. 89, 94 (2007)) "a pro se complaint, .. must be held to less stringent standards than formal pleadings drafted by lawyers.")

4.    I, George Jarvis Austin, am an autodidact, and developing polymath like a. Frederick Augustus Washington Bailey Douglass, abolitionist Lion of Anacostia against anti-Black racism, racial abuse in its many iterations, and American Chattel enslavement (the most brutal, damaging), and b. Abraham Lincoln, Eagle and President of the United States of America, who learned the law, and practiced, through self-teaching, and self edification.  Lincoln, as a store clerk rising from rural poverty, had a uniquely autodidactic, interesting, path to the bar, and Presidency at a time in the U.S. when one could practice law and legally advocate for others in the Courts, *if considered a White man in America's racial caste system (at the time),* without attending law school, passing the bar, or getting bar certified (or licensed) in the ways and means now mandatory.  See e.g.abaforlawstudents .com/2021/11/04/evolution-of-the-bar-exam/?utm_source=feedburner&utm_medium= feed&utm_campaign=Feed%3A+BeforetheBar+%28Before+the+Bar+Blog%29#:~:te xt=In%201855%2C%20Massachusetts%20became%20the,exam%2C%20consisting% 20of%20only%20essays:

(In 1855, Massachusetts became the first state to administer a written bar exam, .... The American legal profession grew in conjunction with the United States' emerging political, social, and economic systems .....Following the establishment of the first bar examinations, law schools began to emerge in the 1870s and the process of becoming a lawyer changed.).

See also; www.loc.gov/exhibits/lincoln/young-lincoln.html#:~:text=Born%20in%20a %20Kentucky%20log,to%20supplement%20his%20family's%20income.

5.    Mr. Austin, who is self represented, is not a juris-doctor (JD) nor has *ever* taken the bar, is a severely injured worker *still* recovering from temporary

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

disability, has a pristine, clean and clear background (see above) with great and strong character (eligible for any employment, or position, including President of the United States).  Although not a barred (licensed) attorney, Mr. Austin is a Northern District, Ninth Circuit, litigant empowered to represent himself *legally*, has good credit, timely pays his debts, is a good person, is a Straight A student (the last 9 semesters), is a member of protected classes (*Black man, recovering from temporary disability from car accident, and injury working at Tesla*) with pristine, clean and clear background. See above and below affidavits.

6.     Also, to note a few additional relevant parts of Mr. Austin's character (outside of him being a good customer-business invitee) he is habitually early, hardworking, highly intelligent and a people person (early role in customer service, as store clerk, honed very personable, emotionally intelligent, empathetic, patient, observant, and loquacious traits when very young).  As one of many examples below Mr. Austin is a Black man, and ongoing independent-contractor with WorkWhile, whose ratings as of June 2024 are still perfect [99%, highest(qualitatively) 5 {out of 5} star ratings].  He is recognized personally by the CEO of WorkWhile as one of the top earners, performers, and top contractors (workers), both qualitatively and quantitatively (overall) with over 3,000 data points and multiple customers reaffirming.  See e.g.

George Jarvis Austin, (Self-represented)
2707 Montauban Ct., Stockton, CA, 209.915.6304, georgejarvisaustin@gmail.com



7.    In the Supreme Court's *237* page opinion they remind of how Black students, and people, have long befuddled bigotry and run circles around racism (*especially*

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

*when there is a meritocratic system*).  See e.g. Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll., No. 20-1199, 104 (U.S. Jun. 29, 2023) ("In fact, [truly] meritocratic systems have long refuted bigoted misperceptions of what [B]lack students [men, and people] can accomplish.").  Mr. Austin is previously identified as top 5% out of 20,000+ students, accepted to 100% of top tier colleges applied to including UCLA and Berkeley, graduated and did well at Berkeley (#1 in major, public, [& overall per Forbes www.forbes.com/sites/madisonfernandez/ 2021/09/08/why-berkeley-is-number-one/?sh=2bbb1b7a47e0 ]).  See e.g. Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll., No. 20-1199, 202 (U.S. Jun. 29, 2023) ("California amended its State Constitution to prohibit race-conscious college admissions in 1996...University of California, Berkeley, a top public university not just in California but also nationally...For example, the University of California purportedly recently admitted its "most diverse undergraduate class ever," despite California's ban on racial preferences. ... UC Admits Largest, Most Diverse Class Ever, But It Was Harder To Get Accepted, L. A. Times, July 20, 2021").  Mr. Austin had already scored in the top 1% of Black students worldwide on the LSAT (top 5-10% overall worldwide; scored *several* timed *perfect scores, can easily score even higher*).  See e.g. Department of Fair Employment & Hous. v. Law School Admission Council, Inc., 941 F. Supp. 2d 1159, 1168 (N.D. Cal. 2013) :

("the LSAT as playing a "crucial role" in "determining applicants' admission to law school (and by extension, to the legal profession....filed suit to halt the ongoing harm to persons ... who seek to enter the legal profession....See alsoCal. Civ.Code § 51(b) ("All persons within the jurisdiction of this state are free and equal, and no matter what their ... [protected characteristics] ... are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever"...DFEH acts as a public prosecutor testing a public right. The interest of DFEH in the law school admissions process was articulately summarized by the United States Supreme Court: In order to cultivate a set of leaders with legitimacy in the eyes of the citizenry, it is necessary that the path to leadership be visibly open to talented and qualified individuals . . . . All members of our heterogeneous society must have confidence in the openness and integrity of the educational institutions that provide this training. As we have recognized, law schools "cannot be effective in isolation from the individuals and

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

institutions with which the law interacts." Access to legal education (and thus the legal **profession) must be inclusive of [all] talented and qualified individuals** . . . so that all members of our heterogeneous society may participate in the educational institutions that provide the training and education necessary to succeed in America......The State of California also has **an interest in eliminating bias and enhancing diversity** in the legal profession, and in furtherance of this interest, the testing process for entry into law school should not be an obstacle to the full and equal participation of individuals with [protected characteristics] in the legal profession. Ensuring that law school admissions reflect the diversity of our society not only affects students with [protected characteristics], but also their would-be classmates who benefit from the presence of those perspectives in the classroom, The legal **profession as a whole, and the society which it serves, stands to be negatively affected by practices that result in [their] unfair exclusion**")

8.     Mr. Austin Won (along with 17 others) a top 10 out of 820+, elite, uber-

competitive Senate fellowship (1 of 64 Capital Fellowship winners; *CA Senate*):

"The now-25-year-old, along with fellow Stockton native George Austin, is receiving the opportunity to be at the forefront of state politics for 11 months starting in October after being chosen to be among 18 Senate Fellows as part of the state's Capital Fellows Program..... But being chosen for the program is no easy task.....The Capital Fellows program has twice been named one of the top 10 best internships alongside the likes of NASA, the Smithsonian Institution and Google Inc. Vault.com, a career-planning website that gave the Capital Fellows that top 10 placing out of 821 internship programs, bases its high-ranking selections on the all-around experience interns receive...."It's a rigorous program," Bunch said. "It's like a yearlong training for them, but they're not only doing an internship, they're also taking graduate courses."...There were more than 1,300 applications for the program each of the past two years. Only 64 people are chosen for the entire program."

-     **www.recordnet.com/story/news/2012/09/08/just-one-fellows/ 49419856007/**

 

As articulated above, Mr. Austin Won a Fellowship in the top 10 out of 820+ (in CA

Senate; most competitive entry less than 4% acceptance rate, my year, for that

program, 1 of 18 selected winners (1 of 2 *winners* out of that area)

www.recordnet.com/story/news/2012/09/08/ just-one-fellows/49419856007/  was

unavailable for press interview at the time but celebrated and honored publicly in

the piece of over 400 elite competitors nationwide, declined automatic job offer as I

gave my word to another commitment and already deferred for a year), accepted

into multiple top tier law schools (including T-14), offered highest scholarship

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

award honors from VP Kamala Harris' alma mater (in San Francisco), more

recently chosen as most outstanding student, as well as top ten business student

ever (selected by professor with over 20 years experience).



George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

9.      Yet, Mr. Austin, a Black male injured Self Represented Pro Se Litigant,

following ABC Legal's publicly outlined policies, *and the law*, was outright

intentionally, facially, and repeatedly discriminated against which "carry a

presumption of bad faith" in violation of 42 USC 1981, 13th, 14th Amendment (both

incorporated into sec. 1981) and Unruh Civil rights Acts.  See e.g. Gonzalez-Rivera

v. I.N.S., 22 F.3d 1441, 1449-50 (9th Cir. 1994)

("we have long regarded *racial oppression as one of the most serious threats to our notion of fundamental fairness* and consider reliance on the use of race or ethnicity as a shorthand for likely illegal conduct to be "repugnant under any circumstances." As a federal court, we must be especially careful to ensure that our laws [and policy] not encourage, even if only indirectly, *such impermissible uses of race*. Where as here it has already been established that the [adverse action or non-action] was based ... on ... race, the government's action is analogous to a facial racial classification. We have long combatted race-based classifications, especially when they are not designed to advantage less powerful racial groups. As the Supreme Court has emphasized, "'discrimination on the basis of race is illegal, immoral, unconstitutional, inherently wrong, and destructive to democratic society.'" City of Richmond v. J.A. Croson Co., 488 U.S. 469, 521, 109 S.Ct. 706, 736, 102 L.Ed.2d 854 (1989) (Scalia J. concurring) (citation omitted). Similarly, in Frazer v. United States, 18 F.3d 778 (9th Cir. 1994) (Trott J.),

the Ninth Circuit reaffirmed its commitment to "our national goal of ending racism," id. at 784. In Frazer, we emphasized that "[a]s a nation we have acted decisively to remove all vestiges of racial discrimination from our lives [and that] [n]ot for a moment will we tolerate racist behavior." Id. at 785.

In the equal protection context, for example, in light of the abhorrent history of race-based classifications, facial racial classifications carry a presumption of bad faith")

10.     Mr. Austin is a Black or African-American man (protected category), whose

Equal Protection, Due Process, related service of process contract rights are being

violated, and who repeatedly complained to get facially discriminatory ("but for";

"because of") violations corrected and investigated per ABC Legal's own policies,

every Constitutional-statutorily defined standard of care, and the law, but was

denied over 200+ instances between July 2022 and now (repeated denials of

contract rights; inferior treatment) which constitutes a 1981 prima facie case, and

more.  See e.g. Lindsey v. SLT L.A., LLC , 447 F.3d 1138, 1145 (9th Cir. 2006);

Chuang v. Univ. of Cal. Davis, Bd. of Trs. , 225 F.3d 1115, 1124 (9th Cir. 2000) (To

establish a prima facie case, Plaintiff needs to provide only minimal evidence that "

'does not even need to rise to the level of a preponderance of the evidence.' ")  See

also e.g. Garza v. City of Inglewood , 874 F.2d 816 (9th Cir. 1989) (mem.); Jefferson

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

v. City of Fremont , 73 F. Supp. 3d 1133, 1144 (N.D. Cal. 2014) (citing Gen. Bldg.

Contractors Ass'n, Inc. v. Pennsylvania , 458 U.S. 375, 391, 102 S.Ct. 3141, 73

L.Ed.2d 835 (1982)) (Plaintiff must establish intentional discrimination to establish

a claim under section 1981.)  See also e.g. Yoshikawa v. Seguirant, 41 F.4th 1109,

1113 (9th Cir. 2022):

"Yoshikawa , 542 F. Supp. 3d at 1111–12. The district court held that § 1981 claims "typically arise in employment discrimination cases," and the court would, accordingly, apply the McDonnell Douglas test: "Plaintiff must plead that he (1) is a member of a protected class, (2) attempted to contract for certain services, and (3) was denied the right to contract for those services." Id. at 1110 (citing Lindsey v. SLT L.A., LLC , 447 F.3d 1138, 1145 (9th Cir. 2006) ). The court concluded that by alleging "that Seguirant, motiv[at]ed by racial animus, tried to prevent the Project from proceeding by engaging in multiple inspections and issuing multiple violations," Yoshikawa had made "sufficient factual allegations to state a Section 1981 claim against Seguirant." Id. at 1111. The district court rejected Seguirant's argument that Yoshikawa had failed to allege that racial animus was the "but-for" cause of the failure of Yoshikawa's project and that, in light of the BBA Order finding building code violations, Yoshikawa could not make such a showing. Id. at 1112. The court observed that "[i]t may be the case that the Project violated the City's ordinances and that Seguirant discriminated against Plaintiff in enforcing those ordinances because of racial animus." Id. "[I]t is possible that Seguirant would not have enforced the City's ordinances in the precise manner that he did if [Yoshikawa's] contractor and architect were of a different race.""

11.   ABC Legal is a California licensed Process Server and Legal Service

Business, a public accommodation business, with a primary physical location in Los

Angeles, and offering physical personal service throughout California (including the

Bay Area).  Under California law, per California's Supreme Court, whether online

or in person ABC Legal owes the legal duty to not discriminate arbitrarily, nor

intentionally, against business invitees (whether direct or indirect), and would be

customers, or litigants.  See White, supra, 7 Cal.5th at p. 1032 [Unruh Civil Rights

Act prohibits discrimination by online businesses].  See also Kentucky Fried

Chicken of Cal. v. Superior Court 14 Cal.4th 814 (Cal. 1997) (In Taylor v.

Centennial Bowl, Inc. (1966) 65 Cal.2d 114 [ 52 Cal.Rptr. 561, 416 P.2d 793]

(hereafter Taylor), we held that, under the common law of California, "the

proprietor of a business establishment" owes a "general duty" to his "business

invitees").  See also e.g. Katzenbach v. McClung, 379 U.S. 294 (1964)((Engaged in

Interstate Commerce) private restaurant ...violated the fourteenth amendment

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

when it refused to serve [B]lack customers.)  See also Newman v. Piggie Park

Enterprises, Inc., 390 U. S. 400, 402, n. 5, 88 S. Ct. 964, 19 L. Ed. 2d 1263 (1968)

(holding that a barbeque vendor must serve [B]lack customers even if he perceives

such service as vindicating racial equality, in violation of his religious beliefs)").

12.    Instead of complying with California, or Federal law, ABC Legal is acting like

the 1950s Defendant Board of Education in *Brown I & II* (whereas obtaining

non-facially discriminatory education systems, in the South, as standard operating

procedure required additional litigation from which the first Black, non-White,

Supreme Court Justice, Thurgood Marshall was instrumental).  See e.g.

www.uscourts.gov/educational-resources/educational-activities/justice-thurgood-mar

shall-profile-brown-v-board

> "Marshall took over the NAACP Legal Defense and Education Fund and argued Sweat v. Painter (1950) and
> McLaurin v. Oklahoma Board of Regents of Higher Education (1950). Having won these cases, and thus,
> establishing precedents for chipping away Jim Crow laws in higher education, Marshall succeeded in having the
> Supreme Court declare segregated public schools unconstitutional in Brown v. Board of Education (1954).
>
> After Brown, Marshall argued many more court cases in support of civil rights. His zeal for ensuring the rights of all
> citizens regardless of race caught the attention of President John F. Kennedy, who appointed him to the U.S. Court
> of Appeals. In 1965, Lyndon Johnson appointed him to the post of Solicitor General (this person argues cases on
> behalf of the U.S. government before the Supreme Court; it is the third highest office in the Justice Department).
> Finally, in 1967, President Johnson appointed him to the U.S. Supreme Court. Until his retirement from the Court
> in 1991, Marshall continued to strive to protect the rights of all citizens. Thurgood Marshall died in 1993, leaving
> behind a legacy that earned him the nickname "Mr. Civil Rights." Before his funeral, his flag-draped casket was laid
> in state in the Great Hall of the Supreme Court. He was only the second justice to be given this honor."

13.    Oliver Brown v. Board of Education II (often called Brown II) was a Supreme

Court case decided in 1955. The year before, the Supreme Court had decided Brown

v. Board of Education (Brown I), which made racial segregation in schools illegal.

However, many all-white schools in the United States had not followed this ruling

and still had not integrated their schools (*choosing to buck the law, enforcing an*

*inferiority complex in Black children and people based on derogatory racial*

*stereotypes*).  In *Brown II*, because of the *ongoing* discriminatory conduct, despite

the previous disposition of the case, only a year prior, it was not barred by Res

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

Judicata, as a separate case, and instead the Court ordered them to integrate their

schools "with all deliberate speed."  Like Defendant's Board of Education II,

Defendant ABC Legal's conduct resembles "interposition and nullification," of now

well settled law, against anti-Black derogatory stereotypes depriving Equal

Protection, Due Process coextensive with right to contract under 1981, access,

inclusion, or respect of rights is telling as to what is in ABC Legal's heart of hearts,

and motives.  ABC Legal, like Defendant Board of Education in *Brown II* not only

flaunts bucking the law (as they themselves voluntarily publicly explain it), but

attempt to utilize underhanded, bad faith, and knowingly false-deceitful tactics to

obstruct Justice.   ABC Legal makes clear their intent: in fact they don't hide it.

They are facially discriminatory, despite over 200+ separate *ongoing* attempts to

make contract and receive service, just like the Board of Education in Brown II

(based on derogatory racial stereotypes), and moreover like reactionary, anti-Black

pre-desegregation, Jim Crow upholding, southern state legislatures who took

immediate action of "interposition and nullification" to impose hardships on those

who operated according to Supreme Court law against US racial apartheid. See e.g.

bluetigercommons.lincolnu.edu/lgaines_sec6/10/#:~:text=State%20

legislatures%20in%20Alabama%2C%20Georgia,anyone%20who%20implemented%2

0desegregation%2C%20and:

> "State legislatures in Alabama, Georgia, Mississippi, South Carolina, and Virginia adopted resolutions of
> "interposition and nullification" that declared the Court's decision to be "null, void, and no effect." Various southern
> legislatures passed laws that **imposed sanctions on anyone who implemented desegregation** enacted school
> closing plans that authorized the suspension of public education, and the disbursement of public funds to parents to
> send their children to private schools."

14.    ABC Legal knows what the law says they have to do, they even explicitly list

what the law says the have to do ( www.abclegal.com/states/california *the golden*

*standard in due process – learn how ABC Legal helps carry out the 14th Amendment*

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

for Californians"); https://www.abclegal.com/blog/copy-of-access-to-the-justice-system-for-the-disabled ), but when it comes to Black males, they feel entitled to say "the hell with the law (*no matter what we write, what our publicly documented policies are based on the law, Equal Protection, Due Process, 13th or 14th Amendment, 42 USC 1981 or Unruh*), and the hell with Black men," just like *Brown II.* See e.g. www.uscourts.gov/educational-resources/educational-activities/justice-thurgood-marshall-profile-brown-v-board

"chipping away [at] Jim Crow ...in higher education, Marshall succeeded in having the Supreme Court declare segregated public schools unconstitutional in Brown v. Board of Education (1954).

After Brown, Marshall argued many more court cases in support of civil rights. His zeal for ensuring the rights of all citizens regardless of race"

Like Justice Marshall, *eradicating this illegal Jim Crow like conduct*, Mr. Austin is taking responsible, conscientious, moral, precedent based legal action against ABC Legal (the largest legal service provider per their own website www.abclegal.com/blog/abc-legal-services-the-nations-largest-service-of-process-provider-announces-new-leadership (*on a smaller scale as a Self Represented litigant who is personally experiencing Jim Crow like [or worse, its Enslaver predecessor era] facially discriminatory conduct from the White, 'Goliath' Defendants he is suing*). In fact, these are precisely the facially discriminatory social ills a young Dr. King outlines over 80 years ago, as early as April 13th in 1944. See also kinginstitute. stanford.edu/king-papers/documents/negro-and-constitution

"On January 1, 1863 the proclamation emancipating the [enslaved Black persons] which had been decreed by President Lincoln in September took effect— millions of Negroes faced a rising sun of a new day begun....

America gave its full pledge of freedom seventy-five years ago. Slavery has been a strange paradox in a nation founded on the principles that all men are created free and equal. Finally after tumult and war, the nation in 1865 took a new stand—freedom for all people. The new order was backed by amendments to the national constitution making it the fundamental law that thenceforth there should be no discrimination anywhere in the "land of the free" on account of race, color or previous condition of servitude.

**Black America still wears chains.**

The finest Negro is at the mercy of the meanest [W]hite man. Even winners of our highest honors face the class color bar. Look at a few of the paradoxes that mark daily life in America. Marian Anderson was barred from singing in the Constitution Hall, ironically enough, by the professional daughters of the very men who founded this nation for

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

liberty and equality. But this tale had a different ending. The nation rose in protest, and gave a stunning rebuke to the Daughters of the American Revolution and a tremendous ovation to the artist, Marian Anderson, who sang in Washington on Easter Sunday and fittingly, before the Lincoln Memorial.

Ranking cabinet members and a justice of the supreme court were seated about her. Seventy-five thousand people stood patiently for hours to hear a great artist at a historic moment.

She sang as never before with tears in her eyes. When the words of "America" and "Nobody Knows De Trouble I Seen" rang out over that great gathering, there was a hush on thee sea of uplifted faces, [B]lack and [W]hite, and a new baptism of liberty, equality and fraternity.

That was a touching tribute, but Miss Anderson may not as yet spend the night in any [White] hotel in America.

Recently she was again signally honored by being given the Bok reward as the most distinguished resident of Philadelphia. Yet she cannot be served in many of the public restaurants of her home city, [even] after it has declared her to be its best citizen.

So, with their right hand they raise to high places the great who have dark skins, and with their left, they slap us down to keep us in "our places." "Yes, America you have stripped me of my garments, you have robbed me of my precious endowment."

We cannot be truly Christian people so long as we flaunt the central teachings of Jesus: brotherly love and the Golden Rule. We cannot come to full prosperity with one great group so ill-delayed that it cannot buy goods. So as we gird ourselves to defend democracy from foreign attack, let us see to it that increasingly at home we give fair play and free opportunity for all people.

Today thirteen million [B]lack sons and daughters of our forefathers continue the fight for the translation of the 13th, 14th, and 15th amendments from writing on the printed page to an actuality...."

-   **Martin Luther King Jr., April 13th, 1944**

15.     A typical ABC Legal service of process customer service procedure for

non-Black male, or White, customers in California typically includes 1a. ABC Legal

Inviting, as Business Invitees ALL California litigants to use their service (either

online or at their physical California locations) without regard to race, color,

sex-gender, age, disability, national origin or other protected characteristics as they

proudly proclaim to believe in the 14th Amendments, and anti-discriminatory

customer service-access to the Judicial system www.abclegal.com/states/california

("*The Golden State deserves the golden standard in due process – learn how ABC

Legal helps carry out the 14th Amendment for Californians.... Deliver documents

with authority anywhere in California with no hidden fees. ABC Legal has you

covered from Napa to San Bernardino, from Del Norte to San Diego, and beyond.*");

https://www.abclegal.com/ blog/copy-of-access-to-the-justice-system-for-the-disabled

1b. Customer providing ABC Legal the customers contact information and

establishing a customer service portal profile with picture (and self identification

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

including race or sex if desired), 2. Customer providing ABC Legal the filed case information for documents to be served 3. ABC Legal verifies that the case is in fact filed in a State or Federal Court 4. Customer providing ABC Legal the documents to be served 5. ABC Legal double or triple checking that there appears no documents missing (i.e. no missing summons or complaint or other essential evidentiary documents explicitly referred to) 6. ABC Legal assigns to a process server in the physical location in California with verified process server license, background check, and credentials to serve the respective parties 7. ABC Legal provides digital updates in the portal and via email on each step of the assigned process server's journey to serve the designated party to the verified lawsuit 8. ABC Legal provides confirmation once service of process is complete 9. ABC Legal provides an affidavit, signed, from the respective process server and proof of service for the respective lawsuit. This process is fairly uniform, with slight business model differentiation across the industry with ABC Legal known for potentially more pictures to accompany the written description of the party being served.

"When someone shows you who they are, believe them
(no matter their race, gender, orientations, color, age, [pr promulgated propaganda] etc.).....
.... Courage is the most important of all the virtues, because without courage you can't practice any other virtue consistently."
- **Maya Angelou**

"Every human being is a puzzle of need. You must learn to intuit what is missing. Become the missing piece...and they will tell you anything."
- **Red Sparrow**

"What is the price of two sparrows—one copper coin?
But not a single sparrow can fall to the ground without your Father knowing it.
And, the very hairs on your head are all numbered.
So don't be afraid; you are more valuable to God than a whole flock of sparrows."
- **Matthew 10:29-31 NLT (New Living Translation)**

Do not despise these small beginnings..

...for the Lord rejoices to see the work begin
- **Zechariah 4:10 New Living Translation**

"The future belongs to God, and it is only He who reveals it, under extraordinary circumstances....
The secret is here in the present. If you pay attention to the present, you can improve upon it.
And, if you improve on the present, what comes later will also be better.

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

> ... live each day according to the teachings, confident that God loves his children.
> Each day, in itself, brings with it an eternity....
> ....Courage is the quality most essential to understanding the Language of the World."
> - The Alchemist, *Paolo Coehlo*

## ABC Legal Admits facially discriminatory, derogatory, use of race

16.  Mr. Austin (*as a legally operating Self Represented litigant, with filed Federal Northern district cases*) notified ABC Legal of their discriminatory policy toward Black men (as he was personally experiencing with one policy for non-Black male, or White litigants-customers to their unfair advantage vs. another for Black male customers-litigants to their detriment).  See e.g. U.S. v. Bourgeois, 964 F.2d 935, 938 (9th Cir. 1992) ("More than a century ago, the Supreme Court observed that the application of laws "*with an evil eye and an unequal hand, so as practically to make unjust and illegal discrimination between persons in similar circumstances*" constitutes a denial of equal protection (*highlighting discriminatory animus*). Yick Wo. v. Hopkins, 118 U.S. 356, 373-74, 6 S.Ct. 1064, 1072-73, 30 L.Ed. 220 (1886)") However, ABC Legal refused to even appropriately begin step 1b. of the typical process (as described above in para 9 for a non-Black male, or White, similarly situated customer or business invitee) to make a contract, or provide non-discriminatory service of process for Mr. Austin.  Under California, and Federal, law Mr. Austin is entitled to make a contract and receive non-discriminatory service (including in price) with ABC Legal, as a Self-Represented California litigant with valid officially filed Northern District Federal Cases.  Mr. Austin also made clear when communicating to ABC Legal he Identifies as Black or African American, and takes pride, and joy, in his heritage.  Unfortunately, ABC Legal, admits operating under the presumption of, and made several derogatory racial comments toward Mr. Austin explicitly making Black skin a "negative" or

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

"less worthy" in their service of process policy or procedure.  See e.g. Heckler v.

Mathews, 465 U.S. 728, 739 (1984) quoted by Bradley v. T-Mobile US, Inc., No.

17-cv-07232-BLF, at *18 (N.D. Cal. Mar. 13, 2020) ("Stigmatic injury—i.e.,

"stigmatizing members of the disfavored group as innately inferior and therefore as

less worthy"—certainly may confer Article III standing in discrimination cases.")

17.    ABC Legal representatives, on repeated problem solving calls, said that in

their system they had noted a derogatory racial stereotype based purely on

presumption (and utilized that "negative" racial presumption to refuse service).  See

also e.g. Harden v. Hillman, 993 F.3d 465, 481 (6th Cir. 2021) (" a civil litigant's

equal protection rights [are violated when] rely[ing] on racial stereotypes or bias")

ABC Legal's display of discriminatory animus toward Mr. Austin is transparent

enough to even pierce the veil of a public official's qualified immunity under the

Ninth Circuit's *Yoshikawa v. Seguirant;* ABC Legal a. made the initial technical

and substantive violations (including 42 USC 1981) to Mr. Austin's detriment b.

admitted the violations (verbally and via other conduct) c. continued the

discriminatory pattern of conduct by not taking required Constitutional-statutorily

defined standard of care required corrective measures to make right with Mr.

Austin (after depriving something Mr. Austin is entitled to under Unruh Act, 1981,

13th, 14th Amend.) d. refused appropriate investigative, or corrective action after

Mr. Austin made over 200+ formal complaints or attempts to contract-service and e.

has no legitimate explanation, nor justification, (to date) for why they behaved in

that manner and felt entitled to deprive Equal Protection, Due Process related

rights that belong to Mr. Austin (outside of discriminatory animus).

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

18.   ABC Legal's discriminatory conduct trumps *Yoshikawa v. Seguirant as they*

first made the errors [absolute refusal of service, service of process contract because

of admitted use of 'presumptive' derogatory racial stereotypes, or race], and then

continued discriminating whereas in *Yoshikawa* defendant's asserted reason was

plaintiffs technical violation which still didn't justify their discriminatory

application of law or policy *(ABC Legal did the technical and substantive violations*

*with the lower threshold of liability for a private actor, making an even more obvious*

*finding of discriminatory intent, or animus).*  See e.g. Yoshikawa v. Seguirant, 41

F.4th 1109, 1117-18 (9th Cir. 2022) [in disposing of Defendants- Appellants attempt

to justify discriminatory application of law or policy, The Ninth Circuit ruled...]

"We disagree, for two reasons. First, despite Seguirant's contentions otherwise, the district court applied the appropriate but-for standard to Yoshikawa's pleadings. Not only did the district court label that section of its opinion "But-for Causation," it cited Comcast and applied the case's "because of" standard. Yoshikawa , 542 F. Supp. 3d at 1112. The district court concluded: "It may be the case that the Project violated the City's ordinances and that Seguirant discriminated against Plaintiff in enforcing those ordinances because of racial animus." Id. (second emphasis added). The district court correctly determined that it is legally possible for an individual to commit a technical violation of a regulation and for enforcement of that regulation still to be discriminatory if the government would not have enforced the regulation in that manner but for the plaintiff's race. See Elliot-Park v. Manglona , 592 F.3d 1003, 1006–09 (9th Cir. 2010).

Second, Seguirant's assertion would mean that a plaintiff would lose on a § 1981 claim as long as the defendant provided some justification for the discriminatory act. Here, Seguirant effectively argues that he would be entitled to qualified immunity even if he had explicitly declared that he only ever enforced the regulation against disfavored racial groups and would not have enforced it but for their race. Seguirant's position is contrary to foundational Fourteenth Amendment principles incorporated in § 1981.

The Fourteenth Amendment provides that "No State shall make or enforce any law which shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1 (emphasis added). Seguirant's reading is in tension with the Supreme Court's analysis of § 1981 in General Building Contractors Ass'n . See 458 U.S. at 386–90, 102 S.Ct. 3141 ; see also supra at —— n.4. Emphasizing the statute's close relationship to the Fourteenth Amendment, the Court explicitly stated that the statute targeted the enforcement of "facially neutral" laws applied with discriminatory intent in the post-war South. Gen. Bldg. Contractors , 458 U.S. at 385–87, 102 S.Ct. 3141.

To hold, then, that any violation of a facially neutral law provides an absolute shield to § 1981 would defeat a central principle of the statute. Rather, the statute's history strongly suggests that sufficiently persuasive evidence of discriminatory enforcement can demonstrate but-for causation under § 1981, even in an as-applied challenge. Moreover, we have long understood that a law may be fair on its face but grossly unfair in its enforcement. The classic case is Yick Wo v. Hopkins , 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). Yick Wo operated a laundry in San Francisco. The city ordinance provided that no person could operate a laundry in San Francisco without obtaining consent from the board of supervisors, "except the same be located in a building constructed either of brick or stone." Id. at 357, 6 S.Ct. 1064 (statement of facts). Yick Wo alleged that more than 150 persons of Chinese ancestry were arrested for operating their laundries, while some 80 others operating "under similar conditions, [we]re left unmolested." Id. at 359, 6 S.Ct. 1064. Citing the Fourteenth Amendment and what is now § 1981(a), the Court held that "[t]hough the law ... be fair on its face, and impartial in appearance," it may be "applied and administered by public authority with an evil eye and an unequal hand." Id. at 373–74, 6 S.Ct. 1064.

Such maladministration was a "denial of equal justice" within the meaning of the Fourteenth Amendment. Id. at 374, 6 S.Ct. 1064. Yoshikawa's allegations, if proven, therefore establish but-for causation, and the district court did not err in concluding they support a denial of Seguirant's motion to dismiss. B. Whether Seguirant's Actions Violated Clearly Established Law The district court read Yoshikawa's complaint to claim that Seguirant's "haole" comment demonstrated racial animus and that Seguirant, motivated by that "racial animus, tried to prevent the

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

Project from proceeding by engaging in multiple inspections and issuing multiple violations." Yoshikawa , 542 F. Supp. 3d at 1111.

We have long held that a public official is not entitled to qualified immunity in a § 1981 case if he is accused of intentional racial discrimination. See Gutierrez v. Mun. Ct. of Se. Jud. Dist., L.A. Cnty. , 838 F.2d 1031, 1050–51 (9th Cir. 1988), vacated on mootness grounds , 490 U.S. 1016, 109 S.Ct. 1736, 104 L.Ed.2d 174 (1989) ; Lowe v. City of Monrovia , 775 F.2d 998, 1011 (9th Cir. 1985). "The constitutional right to be free from such invidious discrimination is so well established and so essential to the preservation of our constitutional order that all public officials must be charged with knowledge of it." Flores v. Pierce , 617 F.2d 1386, 1392 (9th Cir. 1980) ; see Elliot-Park , 592 F.3d at 1008–09 "

19.     Although absolutely not required, nor typical, for non-Black male business invitees, Mr. Austin decided to do ABC Legal a solid, and proactively passed one of their own background checks, run by their vendor of choice: Checkr (*just to ease their minds for whatever irrelevant, presumptive derogatory anti-Black male 'negative' stereotypical views they were holding*).  See e.g. ABC Legal Checkr Background Check (below):

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

Although they already had access to the Checkr background check several years ago, Mr. Austin (in the abundance of caution) even physically sent copies to them (with tracking to ensure receipt), accompanied with formal complaints.  In those formal mailings-complaints Mr. Austin informed them of their displayed illegal discriminatory animus operating by derogatory racial anti-Black stereotypes (yet, they still refused to correct their *ongoing* discriminatory pattern toward Mr. Austin).  Mr. Austin also followed up via email, in the internal comments-complaint- inquiry portal, and called going step by step to alert every senior company officer in ABC legal.  Mr. Austin sought contract, looked for solutions, and pointed out the obvious pre-text for racially discriminatory refusal of service, or contract, directly with them as normal part of duties owed customers, and business invitees, but they held tighter to their own pre-text (lie) than segregationist did to American De Jure Apartheid, and Legalized Racial caste system.

20.     ABC Legal admits a. it is absolutely illegal to presume a derogatory racial stereotype and b. then refuse service based on that presumption, but c. did so anyway over 200+ separate instances to Mr. Austin because he is a Black male litigant, customer, and business invitee.  ABC Legal's conduct, admitted that "but for" Mr. Austin's race, or ABC Legal's use of derogatory racial stereotypes, he would have not been subjected to facially discriminatory policy and like all other service of process businesses in California who willingly serve Mr. Austin's needs as they arise, they would enter contracts and provide Mr. Austin service of process. Further, Mr. Austin would have proceeded through the normal service of process

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

procedure or contract making process (see para. 9) as would a similarly situated

non-Black male litigant "but for" his race.   However, Mr. Austin's informing,

complaints, diligently seeking service or contract, as well as him going out of his

way to clear the air and allow them apologize, and self correct as their derogatory

presumption is absolutely untrue, resulted in continued discriminatory conduct by

ABC Legal; ABC Legal's opportunity came and went, over 200+ separate instances

of attempting service or contract, and so did ABC Legal's excuses and

non-pretextual legal foundation or justification for facially discriminatory conduct

towards Mr. Austin to deprive service, or service of process, contract.   As outlined

above in para. 9, the process is fairly uniform, and straight forward, for non-Black

male litigants-business invitees, or customers with ABC Legal; ABC Legal admitted

to Mr. Austin directly (while troubleshooting) intentionally discriminating against

Black men customers, litigants, and business invitees with derogatory racial

stereotypes, and use of race as negative.   In fact, when Mr. Austin repeatedly

inquired (*as he was confused as to why they refused to serve Black male business

invitees-litigants service when every other process server company was straight

forward*) their agents admitted outright to presuming derogatory anti-Black male

negative stereotypes, and utilizing that as reasoning for illegal denial of service.

ABC Legal has chosen to impermissibly use race, or derogatory racial stereotypes,

to promulgate a facially discriminatory (DeFacto Segregationist with Stigma as

highlighted in *Brown v Board of Education*) procedure, practice and policy toward

Mr. Austin because he is Black man to his detriment (while providing unfair

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

advantages to non-Black male litigants by providing ease of service while creating

headaches, stigma, and emotional toil for Black men).

21.     ABC Legal has explicitly admitted to employing derogatory racial

stereotypes, and race, to create one procedure or policy for Black male litigants and

business invitees to their detriment and another for non-Black male, or White,

similarly situated business invitees to their unfair advantage.  As recently as June

2024, whereas ABC Legal Invited him as Business Invitee (step 1a.), Mr. Austin

experienced explicit, or express, discrete adverse denials of service, or refusals to

make service of process contract (blackballing) by ABC Legal, (adverse action under

Unruh) as soon as he identified himself as a Black, or African American man who is

also proud of his heritage, culture and history (*through self identification, and photo*

*ID, Mr. Austin was immediately blackballed from the normal procedure above*).

Several non-Black male, or White persons-business invitees, similarly situated not

in Mr. Austin's protected class, have shared that they have been allowed to make

multiple portals via ABC Legal and have never had any issues like he is

experiencing even when they complained, exercised their rights against the

company via complaints (public and private), and other forms of official legal and

non-legal actions.  Further, some of the presumably less powerful ABC Legal

workers-agents have expressly said to him that they were confused, and didn't

agree with ABC Legal's conduct, but did not personally know how to change their

business discriminatory operations in their present roles.  ABC Legal has the

infrastructure, and boasts 24/7 access, less than 24 hour support-customer service

response time, and a transparent communication system, at least for non-Black, or

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

White customers-invitees, litigants.  However, showing extreme disparate

treatment with regard to Mr. Austin they do the exact opposite to his detriment

over 200+ times:

> **"24/7 Access**
>
> Access your case information online at any time through your secure account.
>
> Statistics To Set You Apart
>
> In-House Support Staff
> 20
>
> **Average Support Resolution Time**
> **< 24 Hours**
>
> Vetted, Active Process Servers
> 3K
> Service Of Process Done Right
> Served With Authority
> ABC Legal's process server network is the biggest (and best) in the industry. We have process servers ready to
> officially deliver your documents anywhere in the United States. When it matters, trust the pros.
>
> **If We Know It, You Know It**
> Every attempt is validated via GPS coordinates, photos, a time stamp, and process server notes. Details are
> automatically recorded and are available immediately in your dashboard, keeping you effortlessly informed."
> www.abclegal.com/communications
> - 4018507.fs1.hubspotusercontent-na1.net/hubfs/4018507/PDFs/ABCLegal_TransparencyAndCom
>   munication_SMB.pdf

22.    Mr. George Jarvis Austin is being facially discriminated against under sec.

1981 (right 'to make' legal service of process contract as a customer ), lied to, or

deceived, and facially discriminated against under Unruh.  See e.g.  Cal. Civ. Code §

51 ("(b) All persons ... are free and equal, and no matter ..sex, race, color ... entitled

to the full and equal accommodations, advantages, facilities, privileges, or services

in all business establishments...")   ABC Legal admits its impermissible use of race,

or derogatory racial stereotypes (i.e. a Black man self represented litigant).

"I'm tired of marching, I'm tired of marching for something that should have been mine at birth....

...Our destiny is tied up with the destiny of America. Before the Pilgrim fathers landed at Plymouth We [Black People] were
here. Before Jefferson etched across the pages of history the majestic words of the Declaration of Independence We [Black
People] were here. Before the beautiful words of the Star Spangled Banner were written We [Black People] were here. And for
more than two centuries our forbearers labored here without wages. They made cotton King, they built the homes of their
[enslavers] in the midst of the most humiliating and oppressive conditions and yet out of a bottomless vitality they continued
to grow and develop and if the inexpressible cruelties of slavery couldn't stop us, the opposition that we now face including the
[W]hite backlash will surely fail.

We are going to win our freedom because both the sacred heritage of our nation and the eternal will of the Almighty God are
embodied in our echoing demands.

[All] America must see that no other ethnic group [but Black People] has been [en]slave[d] on American soil.

**29 ; Opening Complaint**

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

That is one thing that other immigrant groups haven't had to face. The other thing is that the color became a stigma.

American society made the [so-called N]egroes' [Black People] color a stigma.

America [nominally] freed the [enslaved] in 1863 through the Emancipation Proclamation of Abraham Lincoln but gave the [enslaved] no land or nothing in reality...to get started on.

At the same time, America was giving away millions of acres of land in the west and the Midwest which meant there was a willingness to give the [W]hite [poor] from Europe an economic base.

And yet it refused to give its [Black similarly situated people] from Africa who came involuntarily [kidnapped; enslaved], in chains, and had worked free [by force] for 244 years any kind of economic base.

And so emancipation for the [so-called N]egro [Black People] was really freedom to hunger. It was freedom to the winds and rains of heaven. It was freedom without food to eat or land to cultivate and therefore it was freedom and famine at the same time.

And when [W]hite Americans tell [Black People; Negro] to lift himself by his own bootstraps, they don't look over the legacy of slavery and segregation (*and Black American Holocaust* ***www.abhmuseum.org/about/what-is-the-[B]lack-holocaust/*** )

Now I believe we ought to do all we can and seek to lift ourselves by our own bootstraps.

But it is a 'cruel jest' to say to the bootless man that he ought to lift himself by his own bootstraps.

And many [Black people; so called N]egroes, by the thousands and millions have been left bootless as a result of all of these years of oppression and as a result of a society that deliberately made his color a stigma and something worthless and degrading.....

... At the very same time that America refused to give the [so-called] Negro [Black People]  any land, through an act of Congress, our government was giving away millions of acres of land in the West and the mid-West, which meant that it was willing to undergird its [W]hite peasants from Europe with an economic floor.

"But not only did they give the land, they built land grant colleges with government money to teach them how to farm. Not only that, they provided county agents to further their expertise in farming. Not only that, they provided low interest rates in order that they could mechanize their farms. Not only that, today many of these people are receiving millions of dollars in federal subsidies not to farm.

And they are the very people telling the [B]lack man that he ought to lift himself by his own bootstraps. And this is what we are faced with. Now this is the reality. Now when we come to Washington, in this campaign, we are coming to get Our check."
-    **Martin Luther King, Jr. (Dr.; Rev.)**

"Looky here, America, What you done done-
Let things drift, Until the riots come.

Now your policemen, Let your mobs run free.
I reckon you don't care, Nothing about me.

You tell me that hitler, Is a mighty bad man.
I guess he took lessons, From the ku klux klan.

You tell me mussolini's, Got an evil heart
Well, it mus-a-been in Beaumont, That he had his start-

Cause everything that hitler, And Mussolini do,
Negroes get the same, Treatment from you.

You jim crowed me, Before hitler rose to power-
And you're STILL jim crowing me, Right now, this very hour.

Yet you say we're fighting, For democracy
Then why don't democracy, Include me?

I ask you this question, Cause I want to know
How long I got to fight,  BOTH HITLER – AND JIM CROW "
-    **Langston Hughes; Beaumont to Detroit: 1943**

"Americans always turned a blind eye to what we had done to our own.

We look out to the world and judge.

We hear about the concentration camps,

**30 ; Opening Complaint**

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

But, these camps went on for 200 years… right here, in America."
- **Cecil Gaines (Forest Whitacker) speaking with Gloria Gaines (Oprah Winfrey),** *The Butler by Lee Daniels,* 2013, while pointing to cotton fields as part of America's Black Holocaust; https://www.abhmuseum.org/about/what-is-the-[Bl]ack-holocaust/

23.   Mr. Austin made clear, in various problem solving conversations with ABC Legal, that he Identifies as Black or African American, and takes pride, and joy, in his heritage.   See e.g. Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll., No. 20-1199, 104 (U.S. Jun. 29, 2023) ("In fact, [truly] meritocratic systems have long refuted bigoted misperceptions of what [B]lack students [men, and people] can accomplish.")   See also e.g. The Mis-Education of the Negro. By Carter Godwin Woodson. (Washington: The Associated Publishers, Inc., 1933 ("You might study the history as it was offered in our system from the elementary school throughout the university, and you would never hear Africa mentioned except in the negative. You would never thereby learn that Africans first domesticated the sheep, goat, and cow, *developed the idea of trial by jury*, produced the first stringed instruments, and gave the world its greatest boon in the discovery of iron. You would never know that prior to the Mohammedan invasion about 1000 A.D. these natives in the heart of Africa had developed powerful kingdoms which were later organized as the Songhay Empire www.britannica.com/place/Songhai-empire; www.worldhistory.org/Songhai_Empire/ ; www.worldhistory.org/Mali_Empire/ ; www.worldhistory.org/Mansa_Musa_I/ ; www.history.co.uk/articles/mansa-musa -the-richest-person-in-history  on the order of that of the Romans and boasting of similar grandeur.") Compare Ex Parte Milligan, 71 U.S. 2, 78 (1866)

("Every citizen may safely pursue his lawful calling in the open day; and at night, … he may lie down in security, and sleep the sound sleep of a freeman. They are in force, and they will remain in force. We have not surrendered them, and we never will.

But how am I to prove the existence of these rights?

I do not propose to do it by a long chain of legal argumentation, nor by the production of numerous books with the leaves turned down and the pages marked. If it depended upon judicial precedents, I think I could produce as many as might be necessary. If I claimed this freedom, under any kind of prescription, I could prove a good long possession in ourselves and those under whom we claim it.

**31 ; Opening Complaint**

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

I might begin with Tacitus, and show how the contest arose in the forests of Germany more than two thousand years ago; how the rough virtues and sound common sense of that people established the right of trial by jury, and thus started on a career which has made their posterity the foremost race that ever lived in all the tide of time. The Saxons carried it to England, and were ever ready to defend it with their blood.

It was crushed out by the Danish invasion; and all that they suffered of tyranny and oppression, during the period of their subjugation, resulted from the want of trial by jury.

If that had been conceded to them, the reaction would not have taken place which drove back the Danes to their frozen homes in the North. But those ruffian seakings could not understand that, and the reaction came. Alfred, the greatest of revolutionary heroes and the wisest monarch that ever sat on a throne, made the first use of his power, after the Saxons restored it, to re-establish their ancient laws. He had promised them that he would, and he was true to them because they had been true to him. But it was not easily done; the courts were opposed to it, for it limited their power — a kind of power that everybody covets — the power to punish without regard to law. He was obliged to hang forty-four judges in one year for refusing to give his subjects a trial by jury.

When the historian says that he hung them, it is not meant that he put them to death without a trial. He had them impeached before the grand council of the nation, the Wittenagemote, the Parliament of that time. During the subsequent period of Saxon domination, no man on English soil was powerful enough to refuse a legal trial to the meanest peasant.

If any minister or any king, in war or in peace, had dared to punish a freeman by a tribunal of his own appointment, he would have roused the wrath of the whole population; all orders of society would have resisted it; lord and vassal, knight and squire, priest and penitent, bocman and socman, master and thrall, copyholder and villein, would have risen in one mass and burnt the offender to death in his castle, or followed him in his flight and torn him to atoms. It was again trampled down by the Norman conquerors; but the evils resulting from the want of it united all classes in the effort which compelled King John to restore it by the Great Charter. Everybody is familiar with the struggles which the English people, during many generations, made for their rights with the Plantagenets, the Tudors, and the Stuarts, and which ended finally in the Revolution of 1688, when the liberties of England were placed upon an impregnable basis by the Bill of Rights.

Many times the attempt was made to stretch the royal authority far enough to justify military trials; but it never had more than temporary success. Five hundred years ago Edward II closed up a great rebellion by taking the life of its leader, the Earl of Lancaster, after trying him before a military court. Eight years later that same king, together with his lords and commons in Parliament assembled, acknowledged with shame and sorrow that the execution of Lancaster was a mere murder, because the courts were open, and he might have had a legal trial. Queen Elizabeth, for sundry reasons affecting the welfare of the state, ordered that certain offenders not of her army should be tried according to the law martial. But she heard the storm of popular vengeance rising, and, haughty, imperious, self-willed as she was, she yielded the point; for she knew that upon that subject the English people would never consent to be trifled with. Strafford, as Lord Lieutenant of Ireland, tried the Viscount Stormont before a military commission, and executed him. When impeached, he pleaded in vain that Ireland was in a state of insurrection, that Stormont was a traitor, and the army would be undone if it could not defend itself without appealing to the civil courts.

The Parliament was deaf; the king himself could not save him; he was condemned to suffer death as a traitor and a murderer. Charles I issued commissions to divers officers for the trial of his enemies according to the course of military law. If rebellion ever was an excuse for such an act, he could surely have pleaded it; for there was scarcely a spot in his kingdom, from sea to sea, where the royal authority was not disputed by somebody. Yet the Parliament demanded, in their petition of right, and the king was obliged to concede, that all his commissions were illegal. James II claimed the right to suspend the operation of the penal laws — a power which the courts denied — but the experience of his predecessors taught him that he could not suspend any man's right to a trial.

He could easily have convicted the seven bishops of any offence he saw fit to charge them with, if he could have selected their judges from among the mercenary creatures to whom he had given commands in his army. But this he dared not do. He was obliged to send the bishops to a jury, and endure the mortification of seeing them acquitted. He, too, might have had rebellion for an excuse, if rebellion be an excuse. The conspiracy was already ripe which, a few months afterwards, made him an exile and an outcast; he had reason to believe that the Prince of Orange was making his preparations, on the other side of the Channel, to invade the kingdom, where thousands burned to join him; nay, he pronounced the bishops guilty of rebellion by the very act for which he arrested them. He had raised an army to meet the rebellion, and he was on Hounslow Heath reviewing the troops organized for that purpose, when he heard the great shout of joy that went up from Westminster Hall, was echoed back from Temple Bar, spread down the city and over the Thames, and rose from every vessel on the river — the simultaneous shout of two hundred thousand men for the triumph of justice and law.....

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

...The courts are open, the organization of society is intact, the judges are on the bench, and their process is not impeded; but their jurisdiction is gone. Why? For no reason, if not because war exists, and the silent, legal, technical operation of that fact is to deprive all American citizens of their right to a fair trial. That class of jurists and statesmen who hold that the trial by jury is lost to the citizen during the existence of war, must carry out their doctrine theoretically and practically to its ultimate consequences. **The right of trial by jury being gone, all other rights are gone with it**......We have no apprehension that this power, under our American system of government, in which all official authority is derived from the people, and exercised under direct responsibility to the people.")

24.     Unfortunately, ABC Legal agents, made the derogatory racial comment(s), with conduct substantiating those comments over 200+ separate instances, that being Black (in ABC Legal's system) had some type of inherent "unworthiness" and that somehow being Black was a "negative" in their, ABC Legal's service of process business procedure after Mr. Austin self identified as Black or African American (*in the initial setup process of seeking service of process contract, during multiple troubleshooting calls, emails, and other correspondence*).  See e.g. Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll., No. 20-1199, 7 (U.S. Jun. 29, 2023) ("[ABC Legal's customer service of process] systems also fail to comply with the Equal Protection Clause's [co-existent with section 1981's) twin commands that race may never be used as a "negative" and that it may not operate as a [derogatory] stereotype.... [ABC Legal's structures] are zerosum, and a benefit provided to some [litigants as a public accommodation business] but not to others necessarily advantages the former at the expense of the latter.")")  ABC Legal conferred their own perceived-presumed inferiority (or "stigma") toward Black (male) litigants (as the process should be the same for irregardless of race).  See e.g. Heckler v. Mathews, 465 U.S. 728, 739 (1984) quoted by Bradley v. T-Mobile US, Inc., No. 17-cv-07232-BLF, at *18 (N.D. Cal. Mar. 13, 2020) ("Stigmatic injury—i.e., "stigmatizing members of the disfavored group as innately inferior and therefore as

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

less worthy"—certainly may confer Article III standing in discrimination cases.")

See also e.g. Students for Fair Admissions, Inc. v. President & Fellows of Harvard

Coll., No. 20-1199, 109 (U.S. Jun. 29, 2023)

(" [Forbids] from intentionally treating one person worse than another similarly situated person because of his race, [or derogatory racial stereotypes]"..."In cautioning against 'impermissible racial stereotypes,' this Court has rejected the assumption that 'members of the same racial group-regardless of their age, education, economic status, or the community in which they live-think [or presumptively act] alike '" (quoting Shaw v. Reno, 509 U.S. 630, 647 (1993))..."the Court's Equal Protection Clause ("coextensive" with sec. 1981) jurisprudence forbids such [derogatory] stereotyping"...."furthers "stereotypes that treat individuals as the product of their race, evaluating their thoughts and efforts-their very worth as citizens-according to a criterion barred to the Government by history and the Constitution." Id., at 912 .... Such stereotyping can only "cause[] continued hurt and injury," Edmonson, 500 U.S., at 631, contrary as it is to the "core purpose" of the Equal Protection Clause, Palmore, 466 U.S., at 432."..."tremendous harm inflicted [by use of derogatory racial stereotyping].... See Cooper v. Aaron, 358 U.S. 1, 16 (1958) (following Brown, "law and order are not here to be preserved by depriving the [so-called Negro; Black or African American people] of their constitutional rights"). of their constitutional rights"). As the Court's opinions in these cases make clear, ... racial stereotypes harm and demean individuals.")

25.    ABC Legal knows, and publicly admits, (*because their business model is based on this fact*) to commence a legal proceeding in Federal Court (and represent oneself) service of process is mandatory to establish jurisdiction.  See e.g. U.S. Commodity Futures Trading Comm'n v. Paron Capital Mgmt., LLC, No. 11-4577, 2012 WL 1156396, at *2 (N.D. Cal. Apr. 6, 2012) (citing Omni Capital Int'l v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987))(A federal court lacks personal jurisdiction over a defendant if service of process is insufficient.)  Because Access to Courts, Equal Protection, and Due Process are so dependent on service of process businesses (or process servers), they qualify as a public accommodation businesses.  See e.g. Fed. R. Civ. P. 4.  See also e.g. Kappel v. Bartlett 200 Cal.App.3d 1457 (Cal. Ct. App. 1988) (citing Slaughter v. Legal Process Courier Service 162 Cal.App.3d 1236 (Cal. Ct. App. 1984)):

(that improper service of process, combined with subsequent falsification of an affidavit, could result in a default judgment against the person served and in emotional as well as financial injury to him. In addition, the **policy of encouraging process servers to perform their function responsibly is a sound one, justifying imposition of a legal duty of care** .... The judicial system relies upon process servers to ensure that the due process rights ... are protected, and [protect against] potentially severe consequences ... likely to result [when process servers fail their duty of care].)

See also e.g. Brennon B. v. Superior Court 57 Cal.App.5th 367 (Cal. Ct. App. 2020):

(The "public service doctrine" imposed on occupations and enterprises "providing a particular product or service to the community . . . attached to them certain obligations," including "the duty to serve all customers ... without discrimination." (Tobriner & Grodin, supra, 55 Cal.L.Rev. at p. 1250.))

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

26.     Because process server businesses, like ABC Legal, provide this vital function

for our Judiciary, (serving the public, and public's interest, paid for by the People's

taxes), private for profit process servers are, too, purely businesses of public

accommodation.  See also Leach v. Drummond Medical Group, Inc. 144 Cal.App.3d

362 (Cal. Ct. App. 1983):

> ("Defendant Drummond Medical Group, Inc. is an enterprise affected with a public interest. As such the defendants are under a common law duty to serve all customers without discrimination. The defendants' arbitrary refusal to serve the plaintiffs is in violation of that common law duty." The Supreme Court in In re Cox, supra, 3 Cal.3d 205, discussed the historical background of the Unruh Civil Rights Act).

ABC Legal's designation as a public accommodation business is especially 'apt' as

they utilize only logistical or "incidental" speech, simply transactional, not 'unique'

creative speech, under June 2023, U.S. Supreme Court's *303 Creative LLC et. al. v.*

*Elenis et. al.*

27.     ABC Legal is a public accommodation business and they are absolutely

subject to Federal and State anti-discrimination mandates for all would-be

customers or business invitees (express or implied via advertisements).  In fact,

both the majority and dissenting opinions ruled, and opined, that a public

accommodation business like ABC Legal emphatically and absolutely owes Mr.

Austin this duty, and is currently in violation of that duty by the admitted, repeated

*ongoing* discriminatory conduct.  See e.g. 303 Creative LLC v. Elenis, No. 21-476

(U.S. Jun. 30, 2023)

> ("In saying this much, we do not question the vital role public accommodations laws play in realizing the civil rights of all Americans. This Court has recognized that governments in this country have a "compelling interest" in eliminating discrimination in places of public accommodation. Roberts v. United States Jaycees, 468 U. S. 609, 628 (1984); see also Hurley, 515 U. S., at 571–572. This Court has recognized, too, that public accommodations laws "vindicate the deprivation of personal dignity that surely accompanies denials of equal access to public establishments." Heart of Atlanta Motel, Inc. v. United States, 379 U. S. 241, 250 (1964) (internal quotation marks omitted); see also, e.g., Katzenbach v. McClung, 379 U. S. 294 (1964); Newman v. Cite as: 600 U. S. ___ (2023) 13 Opinion of the Court Piggie Park Enterprises, Inc., 390 U. S. 400 (1968) .... Over time, governments in this country have expanded public accommodations laws in notable ways too. Statutes like Colorado's grow from nondiscrimination rules the common law sometimes imposed on common carriers and places of traditional public accommodation like hotels and restaurants. Dale, 530 U. S., at 656–657. Often, these enterprises exercised something like monopoly power or hosted or transported others ... See, e.g., Liverpool & Great Western Steam Co. v. Phenix Ins. Co., 129 U. S. 397, 437 (1889); Primrose v. Western Union Telegraph Co., 154 U. S. 1, 14 (1894). Over time, some States, ... have expanded the reach of these nondiscrimination rules to cover virtually every place of business engaged in any sales to the public. ... In FAIR, a group of schools challenged a law requiring them, as a condition of accepting federal funds, to permit military recruiters space on campus on equal terms with other

potential employers. 547 U. S., at 51–52, 58. The only expressive activity required of the law schools, the Court found, involved the posting of logistical notices along these lines: " The U. S. Army recruiter will meet interested students in Room 123 at 11 a.m.'" Id., at 61–62. And, the Court reasoned, compelled speech of this sort was "incidental" and a "far cry" from the speech at issue in our "lead- ing First Amendment precedents [that] have established the principle that freedom of speech prohibits the government from telling people what they must say." Ibid.; see also NIFLA, 585 U. S., at ___ (slip op., at 8)..... To be sure, our cases have held that the government may sometimes "requir[e]the dissemination of purely factual and uncontroversial information," particularly in the context of "commercial advertising." Hurley, 515 U. S., at 573 (internal quotation marks omitted); see also NIFLA, 585 U. S., at ___ (slip op., at 8); Riley v. National Federation of Blind of N. C., Inc., 487 U. S. 781, 795–796 (1988).

See also 303 Creative LLC v. Elenis, No. 21-476, 34-35 (U.S. Jun. 30, 2023) ("JUSTICE SOTOMAYOR, with whom JUSTICE KAGAN and JUSTICE JACKSON join, dissenting .... A "public accommodations law" is a law that guarantees to every person the full and equal enjoyment of places of public accommodation without ... discrimination. The American people, through their elected representatives, have enacted such laws at all levels of government: The federal Civil Rights Act of 1964 and the Americans with Disabilities Act of 1990 prohibit discrimination by places of public accommodation on the basis of race, color, religion, national origin, or disability....**makes it unlawful to advertise that services "will be refused, withheld from, or denied," or that an individual is "unwelcome" at a place of public accommodation, based on the same protected traits. §24-34-601(2)(a).** In other words, just as a business open to the public may not refuse to serve customers based on race, religion, or sexual orientation, so too the business may not hang a sign that says, "No Blacks,.....A public accommodations law has two core purposes. First, the law ensures "equal access to publicly available goods and services." Roberts v. United States Jaycees, 468 U.S. 609, 624 (1984) (emphasis added). For social groups that face discrimination, such access is vital. All the more so if the group is small in number or if discrimination against the group is widespread. Equal access is mutually beneficial: Protected persons receive "equally effective and meaningful opportunity to benefit from all aspects of life in America," 135 Cong. Rec. 8506 (1989) (remarks of Sen. Harkin) (Americans with Disabilities Act), and "society," in return, receives "the benefits of wide participation in political, economic, and cultural life." Roberts, 468 U.S., at 625.

**Second, a public accommodations law ensures equal dignity in the common market. Indeed, that is the law's "fundamental object": "to vindicate 'the deprivation of personal dignity that surely accompanies denials of equal access to public establishments.'"** Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241, 250 (1964) (quoting S. Rep. No. 872, 88th Cong., 2d Sess., 16 (1964)). This purpose does not depend on whether goods or services are otherwise available. "Discrimination is not simply dollars and cents, hamburgers and movies; it is the humiliation, frustration, and embarrassment that a person must surely feel when he is told that he is unacceptable as a member of the public because of his [social identity]. It is equally the inability to explain to a child that regardless of education, civility, courtesy, and morality he will be denied the right to enjoy equal treatment.'" 379 U.S., at 292 (Goldberg, J., concurring). When a young Jewish girl and her parents come across a business with a sign out front that says, "'No dogs or Jews allowed,'" the fact that another business might serve her family does not redress that "stigmatizing injury," Roberts, 468 U.S., at 625. Or, put another way, "the hardship Jackie Robinson suffered when on the road" with his baseball team "was not an inability to find some hotel that would have him; it was the indignity of not being allowed to stay in the same hotel as his white teammates." J. Oleske, The Evolution of Accommodation, 50 Harv. Civ. Rights-Civ. Lib. L. Rev. 99, 138 (2015).")

28.    ABC Legal admits, based on its role in the Judicial Process, Equal Protection,

and 14th Amendment, that it has a legal duty to act, and make service of process

contracts, and serve Mr. Austin's (and other Californians) process of service needs,

in a non-discriminatory manner.  This is especially true as Mr. Austin is  a

California Business Invitee who abided by all ABC Legal publicly listed policies,

and more importantly State and Federal law as a self Represented litigant and

customer.  In the over 100+ weeks of discriminatory animus, with Mr. Austin

diligently seek-ing service of process at least twice weekly on average (2 x 100+

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

weeks), but being denied in a facially discriminatory manner, ABC legal has

maintained its admitted facially discriminatory policy purely based on derogatory

racial stereotype, and race.  Because Mr. Austin was already told verbally, on the

phone, that they were using , false, derogatory racial stereotypes for Black men as

the reason for refusing Mr. Austin service because he is a Black man he followed up,

in written word, repeatedly to provide ABC Legal approximately 25-50 additional

opportunities to self correct, and explain their past illegal behavior (even if their

explanation was that they were simply being racist, or discriminatory) on top of the

initial 200+ attempts (both inside and outside of their customer service portal):

"From: ABC Legal <learn@abclegal.com>; Date: On Monday, May 6th, 2024 at 7:51 PM Subject: Your Recent Inquiry at abclegal.com:

To: george

Hi George Jarvis,

Thank you for contacting us at ABC Legal Services. You recently asked us about:

*Did you receive my previous message, formal complaint and attempt to receive service, as a Black male litigant, seeking service of process contract as a customer, after being denied-deprived service-contract over 200+ separate instances? Why am I being denied service, and deprived of rights to make contract?*

Here is some information that may help"

ABC Legal's "information that may help" reiterated their typical steps of creating

an account, placing a service of process order, etc., but provided no information on

how to remove a business' illegal choice to purposefully blackball, or black list a

Black customer (based on derogatory stereotypes).  Mr. Austin subsequently

continued to follow up (in all available methods).  However, ABC Legal refused to

provide an explanation (beyond their initial admission of use of derogatory racial

anti-Black male stereotypes), and refused to self correct their willful *'ongoing'*

blackballing, blacklisting, 200+ refusals to serve, or make service of process contract

with Mr. Austin.  Mr. Austin will not tack on the (25-50) additional attempts into

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

the damage calculations as they were just to show he exhausted his options prior to

filing this suit *(in good faith)*.

29.    ABC Legal admits, publicly, that service of process orders are contracts. Mr.

Austin is *still,* as of June 2024, seeking to make a contract order for service of

process with ABC Legal.  Mr. Austin has attempted now over 200+ times, at least

once weekly, seeking to 'make' a service of process contract as the law mandates

*(and get service of process legal services like he does with every other process server*

*in California - this is the only SOP company behaving in this manner)*.  See e.g. 42

U.S.C. § 1981:

> (" "Make ... contracts" defined For purposes of this section, the term "make ... contracts" includes the making, performance.... and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. (c) Protection against impairment...The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.")

See also e.g. Cal. Civ. Code § 51:

> ("(a) ... the Unruh Civil Rights Act. (b) All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, .... disability, medical condition,... are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever. (c) This section shall not be construed to confer any right or privilege on a person that is conditioned or limited by law or that is applicable alike to persons of every sex, color, race,")

See also e.g. Cal. Civ. Code § 51.5:

> ("(a) No business establishment of any kind [Including Process Servers; ABC Legal] whatsoever shall discriminate against, boycott or blacklist, or refuse to buy from, contract with .... any person in this state on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51...")

See also e.g. Cal. Civ. Code § 52:

> (" (a)Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51, 51.5, or 51.6, is liable for *each and every* offense (minimum $4K per) for the actual damages, *and* any amount that may be determined by a jury, ... up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000)")

*(($4,000 x 200+ attempts with ABC Legal)(x 3 treble damages) = $2,400,000.00+*

*Unruh damages, at least))*.

### COMPLIES WITH FRCP <u>RULE 8</u>; 'ORIGINAL' JURISDICTION;
### FEDERAL WHISTLEBLOWER (ANTI-RETALIATION)

"More than a century ago, the Supreme Court observed that the application of laws "with an evil eye and an unequal hand, so as practically to make unjust and illegal discrimination between persons in similar circumstances" constitutes a denial of equal protection ( or Due Process violations, etc.).
-    **U.S. v. Bourgeois, 964 F.2d 935, 938 (9th Cir. 1992) citing Yick Wo. v. Hopkins, 118 U.S. 356, 373-74, 6 S.Ct. 1064, 1072-73, 30 L.Ed. 220 (1886)"**

30.    It is well established, a complaint's length does not violate <u>Rule 8</u> when

intelligible, organized, and provides fair notice of claims.  There are no page number

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

limits.  Mr. Austin's Opening Complaint, 11 pages less than *Hearns, in the abundance of caution*, meets Rule 8 & Rule 1 pleading standards under Ninth Circuit's *Hearns* "to secure the just, speedy, and inexpensive determination of every action and proceeding." See e.g.  Hearns v. San Bernardino, 530 F.3d 1124, 1127 (9th Cir. 2008) ("81-page complaint alleging discrimination by an African American police officer ... meets Rule 8 standards). "Original," Federal Question, Jurisdiction exists per 28 U.S.C. 1331;  In accord with Rule 10 Mr. Austin's pleading includes a. caption with the court's name, b. title which names all parties, c. file number, d. Rule 7(a) designation & e. Numbered sections-paragraphs for ease of reference.  See FRCP Rule 10:

(Rule 10. Form of Pleadings Primary tabs (a) Caption; Names of Parties. Every pleading must have a caption with the court's name, a title, a file number, and a Rule 7(a) designation. The title of the complaint must name all the parties; the title of other pleadings, after naming the first party on each side, may refer generally to other parties. (b) Paragraphs; Separate Statements. A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.)

Mr. Austin withdrew the entire previously filed case per FRCP Rule 41 (voluntary dismissal or withdrawal)  before Defendant ABC Legal appeared, once Judge Lin violated Mr. Austin's Due Process rights in a racially discriminatory manner (and could not explain the violations, and discrepancies on her own docket *"with an evil eye and unequal hand"*).  In that case, Mr. Austin initially filed proposed summons 14, checked in with RFL CRD Deputy Lock 18, and then motioned to produce summons for prospective relief Defendants 15. For purposes of clarity, judicial economy, fairness and simplicity Mr. Austin requested Judicial Notice 19:

"2.        On 4.23.24 Mr. Austin checked in ahead of time with Judge Lin's CRD Deputy Lock to ensure all needed information was available for summons issuance, and opened the lines of communication for proactive problem solving in case there was any needed information.  Mr. Austin specifically checked in on prospective injunctive relief defendants listed, in full, on the official case title page 3:24-cv-02249-RFL Austin v. ABC Legal Services, LLC, that I incorporate into every filing through hyperlink under FRCP Rule 10(c).

From: George Sent: **Tuesday, April 23, 2024 12:53 PM**
To: Docketing@cand.uscourts.gov; RFL CRD
Subject: Summons Issuance : Activity in Case 3:24-cv-02249-AGT Austin v. ABC Legal Services, LLC Proposed Summons

Good afternoon, Clerk's Office and Courtroom Deputy Lock ...

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

I filed the proposed summons below for listed defendants with only prospective injunctive relief (as a remedy) prior to case reassignment.

Do I need to refile the proposed summons after reassignment to Judge Lin for issuance, or will the previous filing suffice for this summons issuance (below)?

Best,
George Jarvis Austin

From: RFL CRD Tue, **Apr 23, 2024** at 1:36 PM
To: George , "Docketing@cand.uscourts.gov"
Subject: [Re] Summons Issuance : Activity in Case 3:24-cv-02249-AGT Austin v. ABC Legal Services, LLC Proposed Summons

No need to refile the summons.

Thanks,
Melinda Melinda K. Lock, Courtroom Deputy
to District Judge Rita F. Lin
United States District Court Northern District of California
Tel: (415) 522-4172

From: George <georgejarvisaustin@gmail.com>
Date: Thu, May 2, 2024 at 3:55 PM
Subject: Re: Summons Issuance : Activity in Case 3:24-cv-02249-AGT Austin v. ABC Legal Services, LLC Proposed Summons
To: RFL CRD <rflcrd@cand.uscourts.gov>
Cc: Docketing@cand.uscourts.gov <Docketing@cand.uscourts.gov>, ECFHELPDESK <ecfhelpdesk@cand.uscourts.gov>, fedpro <fedpro@sfbar.org>, <rflpo@cand.uscourts.gov>

Good afternoon, Deputy Melinda Lock

Does Judge Lin want more information than Rule 10(a) explicitly instructs for the title page ( **"after naming the first party on each side (i.e. ABC Legal Services, LLC.), [the title page] may refer generally to other parties"**)?

When I checked in on summons issuance in the previous email (see previous), you said there was no need to refile?

I just filed a motion for clarification, order to show cause, correction/amend, etc. as it appears Judge Lin wants more information than Rule 10(a) requires under well settled law for summons issuance.

Because it is a motion for clarification to avoid unnecessary amendments, and in the interest of brevity, judicial economy and simplicity, do I need to file a proposed order along with that motion?

I have included the motion below for ease of reference:

Best,

George Jarvis Austin

3.    Because Mr. Austin was instructed that no additional action, or information, on his part was needed for summons issuance as to those defendants (*and could have proactively been solved if amendments were needed to avoid Due Process violations*), Mr. Austin requests Judicial Notice from the Court to clarify Rule 10 application in this context (as no Northern District judge has ever made this issue before issuance of a summons). Mr. Austin requests Judicial Notice to see if the Court wants information 'beyond' what rule 10 explicitly requires (especially as Mr. Austin incorporates, or adopts, by reference every defendant's precise name under Rule 10(c) via hyperlink (3:24-cv-02249-RFL Austin v. ABC Legal Services, LLC) See FRCP Rule 10(c) ("(c) Adoption by Reference; Exhibits. ...A statement in a pleading (or exhibit) may be adopted by reference."). Also, despite Rule 10's explicit instruction that **"after naming the first party on each side (i.e. ABC Legal Services, LLC.), [the title page] may refer generally to other parties"** with All Defendants referred to generally as **"et. al. Defendants,"** it appears the Court wants each Defendant named individually beyond the "first party on each side" with all others able to "refer generally," or ""(c) Adoption by Reference."

Mr. Austin motioned to clarify, show cause, amend/correct... <u>17</u>, & simultaneously

amended in accord with Order.  As stated in dckt. <u>17</u>, Mr. Austin is federal

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

whistleblower ensuring his Due Process rights are not, further, violated:

> "Henderson v. United States, 517 U.S. 654, 657 (1996):
>
> " Federal Rule of Civil Procedure 4(a) (1988) provided: "Upon the filing of the complaint the clerk shall forthwith issue a summons and deliver the summons to the plaintiff or the plaintiff's attorney, who shall be responsible for prompt service of the summons and a copy of the complaint." Rule 4(b) provided: "The summons shall be signed by the clerk, [and] be under the seal of the court." Rule 4(d) stated: "The summons and complaint shall be served together.""

### Mr. Austin is a Federal Whistleblower, of ongoing illegal conduct

4.      Mr. Austin is a Federal whistleblower, and Black male litigant (with ongoing simultaneous investigations per his formal complaints) protected by whistleblower statutes, protections, per DOJ, AO, etc., regarding good faith formal complaint(s).  Mr. Austin has already provided detailed testimony, and affidavits sworn under penalty of perjury at the behest of Federal Investigators due to defendants anti-Black male, fraud, facially discriminatory, Equal Protection violating, ongoing, conduct and will fully participate and cooperate going forward.

5.      Mr. Austin cannot confirm or deny the full extent of the ongoing investigation at the Federal level with regard to White Supremacist, or anti-Black male, hate groups or empathizers role and ideology, defendant's and their co-conspirators ongoing illegal conduct (as there is a severe uptick in racial anti-Black hatred and attention paid to this type of segregationist anti-Black conduct per FBI, NSA, at the direction of the President Biden, and Vice President Harris and other investigative agencies).  This is part of the formal Whistleblower complaint process, for listed defendants, who have violated Mr. Austin's rights.

### Mr. Austin seeks to avoid any unnecessary delays in accord with Due Process & Equal Protection of his rights

6.      Like *Henderson v. United States* Mr. Austin is properly following rules, and precedent, seeking to avoid any delays.  Henderson v. United States, 517 U.S. 654, 657 (1996):

> "Having timely filed his complaint, Henderson attempted to follow the Federal Rules on service."...
>
> ...."A series of slips occurred in obtaining the summons required by Rule 4. Henderson's counsel requested the appropriate summons forms and file-stamped copies of the complaint on April 8, 1993, the day he filed Henderson's complaint. But the court clerk did not respond immediately. Counsel eventually obtained the forms on April 21, 1993, and completed and returned them to the clerk."...
>
> ...."On June 1, the constable's office returned the documents, informing Henderson's counsel that the summons was not in proper form, because it lacked the court's seal. Counsel thereupon wrote to the court clerk requesting new summons forms with the appropriate court seal. Counsel repeated this request on August 19; ultimately, on August 25, Henderson's counsel received the properly sealed summons. "

7.      The Clerk's failure to timely, and properly, issue summons to all defendants violates Rule 4(a), and subsequently violates Mr. Austin's due process rights.  See e.g. Zinermon v. Burch, 494 U.S. 113, 125-26 (1990) ("The Due Process Clause also encompasses a third type of protection, a guarantee of fair procedure.)  See also e.g. Jefferson v. Stockholders Pub. Co., 194 F.2d 281, 282 (9th Cir. 1952):

> "There was, indeed, a failure to comply with Rule 4(a), namely, the clerk's failure to issue a summons forthwith upon the filing of the complaint. This being an action for libel and no undertaking for the payment of costs having been filed with the complaint, the clerk appears to have assumed that compliance with Rule 4(a) was precluded by § 1 of Act 4317 of Deering's General Laws of California. The assumption was incorrect. Section 1 relates to State court actions, not to Federal court actions. In the Federal courts, compliance with Rule 4(a) is required in all civil actions, including actions for libel.""

Mr. Austin noted the reason(s), and because this case is about these types of fundamental violations of his rights, in a procedural and substantive way, the wisest option was to withdraw the case without sacrificing his causes of action (as ABC Legal's violations are *ongoing*).

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

## ARGUMENT

31 Envy thou not the oppressor*, and choose none of [their] ways.
32 For the froward (perverse; unjust) is abomination to the LORD: but his secret is with the righteous.
33 The curse of the LORD is in the house of the wicked: but he blesseth the habitation of the JUST
      Proverbs 3:31-33

**1. 42 USC 1981, Equal Protection, Due Process       ABC Legal violates sec. 1981, Equal Protection, & Due Process, in concert with Susan Illston, Donna Ryu, Trina Thompson, Edward Chen, Richard Seeborg, Saundra Brown Armstrong, Maxine M. Chesney, Alex G. Tse, William Alsup, Edward J. Davila, Rita F. Lin & Yvonne Gonzales Rogers a. by not offering Mr. Austin service of process contracts on the same basis as non-Black, or White, offerees, b. by subjecting him to different policies, c. by taking concrete steps to create stigma outlawed in *Brown v. Board,* and d. with *ongoing* conduct reinforcing an anti-Black male racial caste system based on negative derogatory racist stereotypes outlawed in *2023's 303 Creative***

31.    ABC Legal's refusal to offer service of process contracts, or make contracts, with Black male litigants-offerees, like Mr. Austin, on the same basis as non-Black male, or White, litigants-offerees (see para. 9 typical offer process), violates 1981 on its face.  See e.g. Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media, 140 S. Ct. 1009, 1016 (2020):

("in General Building Contractors Assn., Inc. v. Pennsylvania , 458 U.S. 375, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982), the Court explained that § 1981 was "designed to eradicate blatant deprivations of civil rights," such as where "a private offeror refuse[d] to extend to [an African-American], ... because he is [an African-American], the same opportunity to enter into contracts as he extends to [W]hite offerees." Id. , at 388, 102 S.Ct. 3141").

ABC Legal's conduct toward Mr. Austin, on over 200+ separate instances, is precisely the "blatant deprivations of civil rights" 1981 was "designed to eradicate."

32.    ABC Legal's different contract or service of process policies for Black men, and in this case facially discriminatory contract making or service of process, policy based on impermissible use race, or derogatory racial stereotypes, for Black male litigants vs. similarly situated non-Black male litigants highlights this very straightforward, and promising, section 1981 claim.  See e.g. Cbocs West, Inc. v. Humphries, 553 U.S. 442, 461 n.2 (2008):

("Of course, if an [organization]; i.e. ABC Legal] had a different ... policy for [B]lacks and [W]hites—[adverse action against] [B]lack [people] who complain of race discrimination but [no adverse action for] similarly situated [W]hite [litigants]—a [B]lack [litigants] who [experienced adverse action] for complaining of race discrimination would have a promising § 1981 claim.... it would be a straightforward claim of racial discrimination.")

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

33.    ABC Legal's process server contract making or service structures are fundamentally flawed (i.e. illegal) in that they use race as a 'negative,' relying upon derogatory racial stereotypes for decision making, creating or reinforcing an anti-Black male racial caste system (displaying racial animus over 200+ separate instances).  See also e.g. Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll., No. 20-1199, 7 (U.S. Jun. 29, 2023):

("[ABC Legal's structures] are infirm for a second reason as well: They require[d] stereotyping [Mr. Austin by the way the operated]-the very thing Grutter foreswore....it engages in ... offensive ... demeaning [and derogatory] assumption[s] .... Such stereotyping is contrary to the "core purpose" of the Equal Protection Clause. Palmore, 466 U.S., at 432. Pp. 2629.")

Similar to ascertaining racially discriminatory animus in a Title VI context (Equal Protection), because 42 USC 1981 is coextensive with Equal Protection especially in ascertaining discriminatory animus, a private organization's discriminatory animus can be shown not only through initial discrete discriminatory acts by their organization, but also by having ability to correct previous discriminatory acts, but refusing to do so (deliberate indifference). See Duvall, 260 F.3d at 1138; id. at 1139 (deliberate indifference is "knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood")   See also e.g. Davis v. Monroe County Bd. of Educ. 526 U.S. 629 (1999) (the [organization]'s failure to respond to discriminatory acts ... is discrimination by the [organization] itself.)

34.    ABC Legal's *ongoing* violations of 42 USC 1981 right "to make" a contract (*where it is required to offer service of process contracts on same basis*) is such a blatant violation that the more limited sec. 1981 language would encapsulate this fact scenario as ABC Legal's conduct deprived Mr. Austin's contract rights even prior to 1991 Congressional expansive language clarification as expressed in *Patterson v. McLean Credit Union.* See e.g.  Patterson v. McLean Credit Union, 491

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

U.S. 164, 165 (1989):

> ("The "right . . . to make . . . contracts" extends... to the formation of a contract, such that § 1981's prohibition encompasses the discriminatory refusal to enter into a contract with someone, as well as the offer to make a contract only on discriminatory terms....Thus, for example, if a potential person is offered (and accepts) a contract ... for less money than others [similarly situated], ... the question under § 1981 remains whether the [organization], at the time of the formation of the contract, in fact intentionally refused to enter into a contract with the employee on racially neutral terms.")

Compare (c.f.) 42 U.S.C. § 1981 (after 1991 amend.)   See also e.g. Domino's Pizza v.

McDonald, 546 U.S. 470, (2006):

> ("can... state a § 1981 claim [when] he has (or would have) rights under the existing (or proposed) contract that he wishes "to make and enforce." The statute, originally enacted as § 1 of the Civil Rights Act of 1866, now protects the equal right of "[a]ll persons" to "make and enforce contracts" without respect to race, § 1981(a), and defines "make and enforce contracts" to "includ[e] the *making, performance, modification, and termination of contracts, and the enjoyment of all benefits . . . of the contractual relationship*," § 1981(b). ... The right to "make contracts" protected by the 1866 legislation was not the insignificant right to act as an agent for someone else's contracting, but was rather the right, denied in some States to [Black people], to give and receive contractual rights on one's own behalf The statute's text makes this common meaning doubly clear by speaking of the right to "make and enforce" contracts.... Any § 1981 claim, therefore, must initially identify an impaired "contractual relationship," § 1981(b), under which the plaintiff has rights.")

35.     As the Supreme Court specifies in *Bell v. Maryland*, and the Ninth Circuit

articulated in *Garza*, ABC LEGAL is illegally promulgating an anti-Black male

racial caste system by its conduct of over 200+ separate discrete acts (or inactions)

constituting refusals service, refusing to sell, depriving contract, and in effect Black

listing Mr. Austin.   See Bell v. Maryland, 378 U.S. 226, 288 (1964):

> ("We cannot blind ourselves to the consequences of a constitutional interpretation which would permit citizens to be turned away by all the restaurants, or by the only restaurant, in town. The denial of the constitutional right of Negroes to access to places of public accommodation would **perpetuate a caste system in the United States**. The Thirteenth, Fourteenth and Fifteenth Amendments do not permit Negroes to be considered as second-class citizens in any aspect of our public life. Under our Constitution distinctions sanctioned by law between citizens because of race, ancestry, color or religion "are by their very nature odious to a free people whose institutions are founded upon the doctrine of equality." Hirabayashi v. United States, 320 U.S. 81, 100.").

See also e.g. Garza v. County of Los Angeles, 918 F.2d 763, 778 n.1 (9th Cir. 1990)

> ("The lay reader might wonder if there can be intentional discrimination without an invidious motive. Indeed there can. A simple example may help illustrate the point. Assume you are an anglo homeowner who lives in an all-white neighborhood. Suppose, also, that you harbor no ill feelings toward minorities. Suppose further, however, that some of your neighbors persuade you that having an integrated neighborhood would lower property values and that you stand to lose a lot of money on your home. On the basis of that belief, you join a pact not to sell your house to minorities. Have you engaged in intentional racial and ethnic discrimination? **Of course you have.** Your personal feelings toward minorities don't matter; what matters is that **you intentionally took actions calculated to keep them out** of your neighborhood.")

ABC Legal's  ongoing conduct highlights racial animus with their internal pact

(blacklisting- blackballing), displayed through 200+ refusals, to refuse Black men

service of process (and illegally keep them out of ABC Legal, and ultimately the

US's Civil Justice System while hypocritically advertising equal access to justice).

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

36.     As the 2023 Supreme Court opined on 6.30.23 in *303 Creative LLC v.*

*Elenis*, ABC LEGAL is purposely harming Mr. Austin's dignity interest

which cannot be corrected simply because other businesses serve his needs,

and they happen to be the only process server company he encountered, thus

far, promulgating an anti-Black man customer, client, litigant, business

invitee, racial caste system by its conduct of over 200+ refusals of service, or

contract.  See e.g. 303 Creative LLC v. Elenis, No. 21-476 (U.S. Jun. 30, 2023)

("In saying this much, we do not question the vital role public accommodations laws play in realizing the civil rights of all Americans. This Court has recognized that governments in this country have a "compelling interest" in eliminating discrimination in places of public accommodation. Roberts v. United States Jaycees, 468 U. S. 609, 628 (1984); see also Hurley, 515 U. S., at 571–572. This Court has recognized, too, that public accommodations laws "vindicate the deprivation of personal dignity that surely accompanies denials of equal access to public establishments." Heart of Atlanta Motel, Inc. v. United States, 379 U. S. 241, 250 (1964) (internal quotation marks omitted); see also, e.g., Katzenbach v. McClung, 379 U. S. 294 (1964); Newman v. Cite as: 600 U. S. ____ (2023) 13 Opinion of the Court Piggie Park Enterprises, Inc., 390 U. S. 400 (1968) .... Over time, governments in this country have expanded public accommodations laws in notable ways too. Statutes like Colorado's grow from nondiscrimination rules the common law sometimes imposed on common carriers and places of traditional public accommodation like hotels and restaurants. Dale, 530 U. S., at 656–657. Often, these enterprises exercised something like monopoly power or hosted or transported others ... See, e.g., Liverpool & Great Western Steam Co. v. Phenix Ins. Co., 129 U. S. 397, 437 (1889); Primrose v. Western Union Telegraph Co., 154 U. S. 1, 14 (1894). Over time, some States, ... have expanded the reach of these nondiscrimination rules to cover virtually every place of business engaged in any sales to the public. ... In FAIR, a group of schools challenged a law requiring them, as a condition of accepting federal funds, to permit military recruiters space on campus on equal terms with other potential employers. 547 U. S., at 51–52, 58. The only expressive activity required of the law schools, the Court found, involved the posting of logistical notices along these lines: " 'The U. S. Army recruiter will meet interested students in Room 123 at 11 a.m.' " Id., at 61–62. And, the Court reasoned, compelled speech of this sort was "incidental" and a "far cry" from the speech at issue in our "lead- ing First Amendment precedents [that] have established the principle that freedom of speech prohibits the government from telling people what they must say." Ibid.; see also NIFLA, 585 U. S., at ___ (slip op., at 8)..... To be sure, our cases have held that the government may sometimes "requir[e]the dissemination of purely factual and uncontroversial information," particularly in the context of "commercial advertising." Hurley, 515 U. S., at 573 (internal quotation marks omitted); see also NIFLA, 585 U. S., at ___ (slip op., at 8); Riley v. National Federation of Blind of N. C., Inc., 487 U. S. 781, 795–796 (1988).

See also 303 Creative LLC v. Elenis, No. 21-476, 34-35 (U.S. Jun. 30, 2023) ("JUSTICE SOTOMAYOR, with whom JUSTICE KAGAN and JUSTICE JACKSON join, dissenting .... A "public accommodations law" is a law that guarantees to every person the full and equal enjoyment of places of public accommodation without ... discrimination. The American people, through their elected representatives, have enacted such laws at all levels of government: The federal Civil Rights Act of 1964 and the Americans with Disabilities Act of 1990 prohibit discrimination by places of public accommodation on the basis of race, color, religion, national origin, or disability....**makes it unlawful to advertise that services "will be refused, withheld from, or denied," or that an individual is "unwelcome" at a place of public accommodation, based on the same protected traits. §24-34-601(2)(a).** In other words, just as a business open to the public may not refuse to serve customers based on race, religion, or sexual orientation, so too the business may not hang a sign that says, "No Blacks,.....A public accommodations law has two core purposes. First, the law ensures "equal access to publicly available goods and services." Roberts v. United States Jaycees, 468 U.S. 609, 624 (1984) (emphasis added). For social groups that face discrimination, such access is vital. All the more so if the group is small in number or if discrimination against the group is widespread. Equal access is mutually beneficial: Protected persons receive "equally effective and meaningful opportunity to benefit from all aspects of life in America," 135 Cong. Rec. 8506 (1989) (remarks of Sen. Harkin) (Americans with Disabilities Act), and "society," in return, receives "the benefits of wide participation in political, economic, and cultural life." Roberts, 468 U.S., at 625.

Second, a public accommodations law ensures equal dignity in the common market. Indeed, that is the law's "fundamental object": "to vindicate 'the deprivation of personal dignity that surely accompanies denials of equal access to public establishments.'" Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241, 250 (1964) (quoting S. Rep. No. 872, 88th Cong., 2d Sess., 16 (1964)). This purpose does not depend on whether goods or services are otherwise available. "'Discrimination is not simply dollars and cents, hamburgers and movies; it is the humiliation, frustration, and embarrassment that a person must

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

surely feel when he is told that he is unacceptable as a member of the public because of his [social identity]. It is equally the inability to explain to a child that regardless of education, civility, courtesy, and morality he will be denied the right to enjoy equal treatment.'" 379 U.S., at 292 (Goldberg, J., concurring). When a young Jewish girl and her parents come across a business with a sign out front that says, "'No dogs or Jews allowed,'" the fact that another business might serve her family does not redress that "stigmatizing injury," Roberts, 468 U.S., at 625. Or, put another way, "the hardship Jackie Robinson suffered when on the road" with his baseball team "was not an inability to find some hotel that would have him; it was the indignity of not being allowed to stay in the same hotel as his white teammates." J. Oleske, The Evolution of Accommodation, 50 Harv. Civ. Rights-Civ. Lib. L. Rev. 99, 138 (2015).")

37.    ABC LEGAL is purposely creating stigma by conduct that promulgates

a type of separate and unequal anti-Black man customer racial caste system

policy or practice highlighted as illegal in *Brown v. Board* (De Facto

segregationist) that undermines human dignity and violates the

Constitution, California's Unruh Act, and basic notions of human morality of

right and wrong.  ABC Legal conferred their own perceived-presumed

inferiority (or "stigma") toward Black (male) litigants (as the process should

be the same for irregardless of race).  See e.g. Heckler v. Mathews, 465 U.S.

728, 739 (1984) quoted by Bradley v. T-Mobile US, Inc., No. 17-cv-07232-BLF,

at *18 (N.D. Cal. Mar. 13, 2020) ("Stigmatic injury—i.e., "stigmatizing

members of the disfavored group as innately inferior and therefore as less

worthy"—certainly may confer Article III standing in discrimination cases.")

See also e.g. Students for Fair Admissions, Inc. v. President & Fellows of

Harvard Coll., No. 20-1199, 109 (U.S. Jun. 29, 2023)

(" [Forbids] from intentionally treating one person worse than another similarly situated person because of his race, [or derogatory racial stereotypes]"..."In cautioning against 'impermissible racial stereotypes,' this Court has rejected the assumption that 'members of the same racial group-regardless of their age, education, economic status, or the community in which they live-think [or presumptively act] alike '" (quoting Shaw v. Reno, 509 U.S. 630, 647 (1993))..."the Court's Equal Protection Clause ("coextensive" with sec. 1981) jurisprudence forbids such [derogatory] stereotyping"...."furthers "stereotypes that treat individuals as the product of their race, evaluating their thoughts and efforts-their very worth as citizens-according to a criterion barred to the Government by history and the Constitution." Id., at 912 .... Such stereotyping can only "cause[] continued hurt and injury," Edmonson, 500 U.S., at 631, contrary as it is to the "core purpose" of the Equal Protection Clause, Palmore, 466 U.S., at 432."..."tremendous harm inflicted [by use of derogatory racial stereotyping].... See Cooper v. Aaron, 358 U.S. 1, 16 (1958) (following Brown, "law and order are not here to be preserved by depriving the [so-called Negro; Black or African American people] of their constitutional rights"). of their constitutional rights"). As the Court's opinions in these cases make clear, ... racial stereotypes harm and demean individuals.")

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

The combination of violations in total disregard of Mr. Austin's rights as a Black male business invitee, civil litigant, admissions of violations of precisely defined statutory standards of care, refusal to apologize, or correct, violating sec. 1981, Equal Protection, Due Process rights, and subsequent anti-Black male derogatory racial caste exclusionary policies, demonstrate their repeated choices to "mark with a badge of inferiority" because of Mr. Austin race; ABC Legal in concert with Susan Illston, Donna Ryu, Trina Thompson, Edward Chen, Richard Seeborg, Saundra Brown Armstrong, Maxine M. Chesney, Alex G. Tse, William Alsup, Edward J. Davila, Rita F. Lin & Yvonne Gonzales Rogers has shown repeated incompetence of the Supreme Court's standards for racial animus, a propensity to display their own anti-Black male racial animus, made "non judicial acts" to presume the outcomes of a case, or interference, willfully ignoring Rules of Civil Procedure to deprive Due Process (displayed through intentionally ignoring essential facts, hostility & deceit), utilizing unequal standards to exclude Mr. Austin' from Due Process, Equal Protection because he is a Black man. See e.g. Pierson v. Ray 386 U.S. 547 (1967)

Cited 5,322 times

> "In Ex parte Virginia, 100 U.S. 339, the Court held that a judge who excluded Negroes from juries could be held liable under the Act of March 1, 1875 ( 18 Stat. 335), one of the Civil Rights Acts. The Court assumed that the judge was merely performing a ministerial function. But it went on to state that the judge would be liable under the statute even if his actions were judicial. It is one thing to say that the common-law doctrine of judicial immunity is a defense to a common-law cause of action. But it is quite another to say that the common-law immunity rule is a defense to liability which Congress has imposed upon "any officer or other person," as in Ex parte Virginia, or upon "every person" as in these cases."

Beard v. Udall 648 F.2d 1264 (9th Cir. 1981) Cited 51 times

> "[I]f a judge connives with one of the parties to predetermine the outcome of a judicial proceeding, the other parties' expectations are frustrated. Id. Moreover, the court noted, an agreement by a judge to predetermine the outcome of a proceeding is "not a function normally performed by a judge." Id. Even though the judge's disposition of the proceeding remains a judicial act, under Rankin the prior agreement is deemed the essential cause of any deprivation of federally protected rights. Accordingly, the judge may be liable for damages due to the deprivation."

**2. Unruh Act.**      **ABC Legal violates Unruh a. by outright refusing to offer Mr. Austin service of process contracts on the same basis as non-Black, or White, litigant-offerees,  refusing to sell at all, blacklisting or blackballing violating the face Civ. Code 51, 51.5, & 52 b. by subjecting him to different segregationist anti-Black male exclusionary policies as recently re-iterated**

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

as outlawed by California Supreme Court in *White v. Square*, c. by taking concrete steps to create anti-Black male racial caste system based stigma outlawed in *Brown v. Board,* and d. with *ongoing* conduct reinforcing an anti-Black male racial caste system based on negative derogatory racist stereotypes re-iterated as outlawed in US Supreme Court's 2023, *303 Creative LLC* with each of its 200+ discrete adverse acts amounting to $4,000 each ; $4,000 x 200+ attempts with ABC Legal)(x 3 treble damages for malice, knowing, willful conduct) = $2,400,000.00 *minimum*

38.　　ABC Legal's refusal to offer service of process contracts, or make contracts, with Black male litigants-offerees, like Mr. Austin, on the same basis as non-Black male, or White, litigants-offerees (see para. 9-11 typical offer process), not only violates the face of sec. 1981 (see para. 24), but also violates the Unruh Act by refusing to sell, at all, blacklisting or blackballing violating the face Civ. Code 51,51.5,& 52. See e.g. Cal. Civ. Code § 51 ("(a) ... the Unruh Civil Rights Act. (b) All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, …. disability, medical condition,... are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever. (c) This section shall not be construed to confer any right or privilege on a person that is conditioned or limited by law or that is applicable alike to persons of every sex, color, race,") See also e.g. Ross v. Forest Lawn Memorial Park, 153 Cal.App.3d 988, 992 (Cal. Ct. App. 1984) ("Cox held that "the Civil Rights Act forbids a business establishment generally open to the public from arbitrarily excluding a prospective customer." ( In re Cox, supra, at p. 217.)").

39.　　Analogous to ABC Legal's facially violative conduct under 42 U.S.C. § 1981 [refusing to] (" "Make ... contracts") because of Mr. Austin's race, or derogatory racial stereotypes, described above, ABC Legal simultaneously violates the face of the Unruh statutes Cal. Civ. Code 51-52 by violating its command that "No business establishment [including ABC Legal] of any kind [Including Process Server

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

Companies; ABC Legal] whatsoever shall discriminate against, boycott or blacklist, or refuse to buy from, contract with .... any person in this state." See e.g. Cal. Civ. Code § 51.5 ("(a) No business establishment of any kind [Including Process Server Companies; ABC Legal] whatsoever shall discriminate against, boycott or blacklist, or refuse to buy from, contract with .... any person in this state on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51...") See also e.g. Cal. Civ. Code § 52 (" (a)Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51, 51.5, or 51.6, is liable for *each and every* offense (minimum $4K per) for the actual damages, *and* any amount that may be determined by a jury, ... up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000)"). Each of ABC Legal's 200+ discrete adverse acts amounts to $4,000 each; $4,000 per each denial or refusal of service x(multiplied by) 200+ attempts with ABC Legal equals $800,000+ dollars then x(multiplied by) 3 for **Unruh** treble damages due to ABC Legal's demonstrated malice, knowing, willful conduct = **$2,400,000.00 minimum**.

40.    ABC Legal's conduct violates the face of Unruh, similar to 1981, by subjecting Mr. Austin to different segregationist anti-Black male exclusionary policies as recently re-iterated as outlawed by California Supreme (and Appellate) Court in

*White v. Square*. See White v. Square, Inc., 7 Cal.5th 1019, 1028 (Cal. 2019)

("In addition, White alleges that he visited Square's website and reviewed its terms of service with the specific intention to sign up for Square's services and to use them in his bankruptcy law practice. Angelucci does not squarely address whether this is sufficient to establish standing, but our reasoning is suggestive. We made clear that standing under the Unruh Civil Rights Act extends to "persons encountering, as they did in past decades, racially segregated drinking fountains or restroom facilities at an unattended structure" — occasions "when there was no one present to receive and answer a demand for equal treatment." ( Angelucci , supra , 41 Cal.4th at p. 170, 59 Cal.Rptr.3d 142, 158 P.3d 718.) The Act does not require a black plaintiff in that situation to make use of the blacks-only facility (or make use of the whites-only facility in violation of the segregation policy) in order to have standing. It is sufficient for a plaintiff to "encounter[ ]" ( Angelucci , at p. 170, 59 Cal.Rptr.3d 142, 158 P.3d 718 ) an unattended facility with the intent to use it. There is no doubt that such a plaintiff, even if he or she departed without using the facility, could properly claim he or she was "denied [equal] rights" and was "aggrieved by the [discriminatory] conduct." (§ 52, subd. (a), (c).) The same rule would apply in the case of a person who visited and intended to patronize an unattended establishment generally open to the public (e.g., a self-serve kiosk) but then encountered a sign prohibiting access on the basis of the person's membership in a protected category. In such circumstances, the person would not need to violate or attempt to violate the stated exclusionary policy before bringing a claim. The high court, adopting a similar rule under title VII of the Civil Rights Act of 1964, explained: "If

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

an employer should announce his policy of discrimination by a sign reading 'Whites Only' on the hiring-office door, his victims would not be limited to the few who ignored the sign and subjected themselves to personal rebuffs....")

41.     As the Supreme Court specifies in *Bell v. Maryland*, and the Ninth Circuit articulated in *Garza*, ABC LEGAL is illegally promulgating an anti-Black male racial caste system by its conduct of over 200+ separate discrete acts (or inactions) constituting refusals service, refusing to sell, depriving contract, and in effect Black listing Mr. Austin that violates the face of the Unruh Act (and its California's predecessors) as well as sec. 1981 (para. 29) highlighting racial animus with their internal pact to refuse Black men service of process (to illegally keep them out of the US's Civil Justice System while hypocritically advertising equal access to justice) See para. 29-31.

42.     Decision making by derogatory racial stereotype, or race, (as ABC Legal is presently doing to Mr. Austin) is so 'repugnant' that it is outlawed in every phase of the Justice system, and the private sector servicing that Justice system, because it 'retards ... progress [in society],' especially with regard to injured, temporarily disabled, Black male, Self Represented litigants access to the Civil Justice System (incorporating Equal Protection, Due Process, 13th, 14th, 1981 and of course Unruh Act rights).  See e.g. Edmondson v. Leesville Concrete Co., 500 U.S. 614, 630-631 (1991) ("If our society is to continue to progress as a multiracial democracy, it must recognize that the automatic invocation of [R]ace stereotypes retards that progress and causes continued hurt and injury.")  See also e.g. Nguyen v. Immigration and Naturalization Service, 533 U.S. 53, 68 (2001) (stereotyping is fundamentally irrational, .... defining "stereotype" as "a frame of mind resulting from irrational or uncritical analysis"), it can support an inference of unlawful discrimination.)  See

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

also e.g. Martinez v. Village of Mount Prospect 92 F. Supp. 2d 780 (N.D. Ill. 2000)

("Racially stereotypic perceptions operate like a deadly cancer on our justice

system.")  See also e.g. Kahn v. Shevin, 416 U.S. 351, 357 (1974) ("[R]ace, … often

[has] been inexcusably utilized to stereotype and stigmatize politically powerless

segments of society.")  See also e.g. Henderson v. Thompson, 518 P.3d 1011, 1025

(Wash. 2022) ("When a participant in the trial uses language that could evoke racist

stereotypes, courts should not presume that such language has no effect—on them

or on the jurors. The harm in an appeal to racial bias is in its effect on the

decision-maker, regardless of the intent behind the reference, because "people will

act on … bias far more often").  See also e.g. McGee v. Kirkland, 726 F. Supp. 2d

1073, 1091 (C.D. Cal. 2010) ("" [Litigants] are harmed, of course, when racial

discrimination in jury selection compromises the right of trial by impartial jury, but

racial minorities are harmed more generally, for prosecutors drawing racial lines in

picking juries establish state-sponsored group stereotypes rooted in, and reflective

of, historical prejudice." Miller-El II, 545 U.S. at 237-38, 125 S.Ct. 2317")  See also

e.g. Harden v. Hillman, 993 F.3d 465, 481 (6th Cir. 2021) (" a civil litigant's equal

protection rights [are violated even] when jurors rely on racial stereotypes or bias")

See also Edmonson, 500 U.S., at 630 (opinion for the Court by KENNEDY, J.) ("[I]f

race stereotypes are the price for acceptance of a jury panel as fair, the price is too

high to meet the standard of the Constitution").See also e.g. Calhoun v. United

States, 133 S. Ct. 1136, (2013):

("The Constitution prohibits racially biased …. [stereotyped] arguments." McCleskey v. Kemp, 481 U.S. 279, 309, n.
30, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987). Such argumentation is an affront to the Constitution's guarantee of equal
protection of the laws. And by threatening to cultivate bias in the jury, it equally offends the defendant's right to an
impartial jury. Judge Frank put the point well: "If …. allowed to inflame the jurors by irrelevantly arousing their
deepest prejudices, the jury may become in his hands a lethal weapon directed against [those] who may be innocent.
He should not be permitted to summon that thirteenth juror, prejudice." United States v. Antonelli Fireworks Co.,
155 F.2d 631, 659 (C.A.2 1946) (dissenting opinion) (footnote omitted). Thus it is a settled professional standard that

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

a "prosecutor should not make arguments calculated to appeal to the prejudices of the jury." ABA Standards for Criminal Justice, Prosecution Function and Defense Function, Standard 3–5.8(c), p. 106 (3d ed.1993).... [T]he prosecutor here tapped a deep and sorry vein of racial prejudice that has run through the history of criminal justice in our Nation. There was a time when appeals to race were not uncommon, when a prosecutor might .... assure a jury that " 'I am well enough acquainted with this class of n*gg*rs to know that they have got it in for the [W]hite] race in their heart,' " Taylor v. State, 50 Tex.Crim. 560, 561, 100 S.W. 393 (1907). The prosecutor's comment here was surely less extreme. But it too was pernicious in its attempt to substitute 'racial stereotype' for evidence, and racial prejudice for reason.  It is deeply disappointing to see a representative of the United States resort to this base tactic more than a decade into the 21st century.

Such conduct diminishes the dignity of our ... justice system and undermines respect for the rule of law.

We expect the Government to seek justice, not to fan the flames of fear and prejudice. In discharging the duties of his office in this case, the Assistant United States Attorney for the Western District of Texas missed the mark.)

43.    ABC Legal's more 'Overt' impermissible 'negative' use of race, or derogatory

racial stereotypes, toward Mr. Austin operates less like a 'dog whistle' coded like the

Northern District's *Washington v. Duty Free Shoppers* or described as *'wolves in*

*sheep's clothing'* by the Supreme Court of Washington *in Henderson v. Thompson,*

and instead operates more like the facial statutory violative historical references

reiterated as outlawed in 2023 US Supreme Court's *303 Creative LLC v. Elenis*

signs advertising "No Blacks..." and as described in *Students for Fair Admissions,*

*Inc. v. President & Fellows of Harvard Coll.* as absolutely prohibited.See e.g.

Henderson v. Thompson, 518 P.3d 1011, 1022 (Wash. 2022)
(""Not all appeals to racial prejudice are blatant. Perhaps more effective but just as insidious are subtle references." Monday , 171 Wash.2d at 678, 257 P.3d 551. Coded "dog whistle" language impermissibly allows the speaker to appeal to racial bias and then excuse that behavior by arguing they did not intend to say anything racist. See id. at 678-79, 257 P.3d 551 ("Like wolves in sheep's clothing, a careful word here and there can trigger racial bias." (citing studies)).")

See also e.g. Washington v. Duty Free Shoppers, 696 F. Supp. 1323, 1324 (N.D. Cal. 1988):
("Plaintiffs, who are Black, allege that defendants conspired to prevent them from shopping at DFS because of their race. They further charge that defendants **maintain a policy and practice designed to deny Blacks the accommodations, privileges, and services offered** by defendants **on account of their race in violation of 42 U.S.C. § 1981, 1983, 1985**(3), and 1986, and **California Civil Code § 51**....Plaintiffs allege that it is the policy and practice of DFS to discriminate against [B]lack customers by using a system of code words and other signals to announce when a [B]lack person enters the gift shop. They assert that after such an announcement it is the policy and practice of employees of DFS to approach ... only [B]lack customers... for the purpose of preventing Blacks from shopping in the store."").

See also e.g. 303 Creative LLC v. Elenis, No. 21-476 (U.S. Jun. 30, 2023):
("In saying this much, we do not question the vital role public accommodations laws play in realizing the civil rights of all Americans. This Court has recognized that governments in this country have a "compelling interest" in eliminating discrimination in places of public accommodation. Roberts v. United States Jaycees, 468 U. S. 609, 628 (1984); see also Hurley, 515 U. S., at 571–572. This Court has recognized, too, that public accommodations laws "vindicate the deprivation of personal dignity that surely accompanies denials of equal access to public establishments." Heart of Atlanta Motel, Inc. v. United States, 379 U. S. 241, 250 (1964) (internal quotation marks omitted); see also, e.g., Katzenbach v. McClung, 379 U. S. 294 (1964); Newman v. Cite as: 600 U. S. ____ (2023) 13 Opinion of the Court Piggie Park Enterprises, Inc., 390 U. S. 400 (1968) .... Over time, governments in this country have expanded public accommodations laws in notable ways too. Statutes like Colorado's grow from nondiscrimination rules the common law sometimes imposed on common carriers and places of traditional public accommodation like hotels and restaurants. Dale, 530 U. S., at 656–657. Often, these enterprises exercised

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

something like monopoly power or hosted or transported others ... See, e.g., Liverpool & Great Western Steam Co. v. Phenix Ins. Co., 129 U. S. 397, 437 (1889); Primrose v. Western Union Telegraph Co., 154 U. S. 1, 14 (1894). Over time, some States, ... have expanded the reach of these nondiscrimination rules to cover virtually every place of business engaged in any sales to the public. ... In FAIR, a group of schools challenged a law requiring them, as a condition of accepting federal funds, to permit military recruiters space on campus on equal terms with other potential employers. 547 U. S., at 51–52, 58. The only expressive activity required of the law schools, the Court found, involved the posting of logistical notices along these lines: " 'The U. S. Army recruiter will meet interested students in Room 123 at 11 a.m.'" Id., at 61–62. And, the Court reasoned, compelled speech of this sort was "incidental" and a "far cry" from the speech at issue in our "lead- ing First Amendment precedents [that] have established the principle that freedom of speech prohibits the government from telling people what they must say." Ibid.; see also NIFLA, 585 U. S., at ___ (slip op., at 8)..... To be sure, our cases have held that the government may sometimes "requir[e]the dissemination of purely factual and uncontroversial information," particularly in the context of "commercial advertising." Hurley, 515 U. S., at 573 (internal quotation marks omitted); see also NIFLA, 585 U. S., at ___ (slip op., at 8); Riley v. National Federation of Blind of N. C., Inc., 487 U. S. 781, 795–796 (1988).

See also 303 Creative LLC v. Elenis, No. 21-476, 34-35 (U.S. Jun. 30, 2023) ("JUSTICE SOTOMAYOR, with whom JUSTICE KAGAN and JUSTICE JACKSON join, dissenting .... A "public accommodations law" is a law that guarantees to every person the full and equal enjoyment of places of public accommodation without ... discrimination. The American people, through their elected representatives, have enacted such laws at all levels of government: The federal Civil Rights Act of 1964 and the Americans with Disabilities Act of 1990 prohibit discrimination by places of public accommodation on the basis of race, color, religion, national origin, or disability....makes it unlawful to advertise that services "will be refused, withheld from, or denied," or that an individual is "unwelcome" at a place of public accommodation, based on the same protected traits. §24-34-601(2)(a). In other words, just as a business open to the public may not refuse to serve customers based on race, religion, or sexual orientation, so too the business may not hang a sign that says, "No Blacks,.....A public accommodations law has two core purposes. First, the law ensures "equal access to publicly available goods and services." Roberts v. United States Jaycees, 468 U.S. 609, 624 (1984) (emphasis added). For social groups that face discrimination, such access is vital. All the more so if the group is small in number or if discrimination against the group is widespread. Equal access is mutually beneficial: Protected persons receive "equally effective and meaningful opportunity to benefit from all aspects of life in America," 135 Cong. Rec. 8506 (1989) (remarks of Sen. Harkin) (Americans with Disabilities Act), and "society," in return, receives "the benefits of wide participation in political, economic, and cultural life." Roberts, 468 U.S., at 625.

Second, a public accommodations law ensures equal dignity in the common market. Indeed, that is the law's "fundamental object": "to vindicate 'the deprivation of personal dignity that surely accompanies denials of equal access to public establishments.'" Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241, 250 (1964) (quoting S. Rep. No. 872, 88th Cong., 2d Sess., 16 (1964)). This purpose does not depend on whether goods or services are otherwise available. "Discrimination is not simply dollars and cents, hamburgers and movies; it is the humiliation, frustration, and embarrassment that a person must surely feel when he is told that he is unacceptable as a member of the public because of his [social identity]. It is equally the inability to explain to a child that regardless of education, civility, courtesy, and morality he will be denied the right to enjoy equal treatment." 379 U.S., at 292 (Goldberg, J., concurring). When a young Jewish girl and her parents come across a business with a sign out front that says, "No dogs or Jews allowed,'" the fact that another business might serve her family does not redress that "stigmatizing injury," Roberts, 468 U.S., at 625. Or, put another way, "the hardship Jackie Robinson suffered when on the road" with his baseball team "was not an inability to find some hotel that would have him; it was the indignity of not being allowed to stay in the same hotel as his white teammates." J. Oleske, The Evolution of Accommodation, 50 Harv. Civ. Rights-Civ. Lib. L. Rev. 99, 138 (2015).")

See also e.g. Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll., No. 20-1199, 109 (U.S. Jun. 29, 2023):

(" [Forbids] from intentionally treating one person worse than another similarly situated person because of his race, [or derogatory racial stereotypes]"..."In cautioning against 'impermissible racial stereotypes,' this Court has rejected the assumption that 'members of the same racial group-regardless of their age, education, economic status, or the community in which they live-think [or presumptively act] alike '" (quoting Shaw v. Reno, 509 U.S. 630, 647 (1993))..."the Court's Equal Protection Clause ("coextensive" with sec. 1981) jurisprudence forbids such [derogatory] stereotyping"...."furthers "stereotypes that treat individuals as the product of their race, evaluating their thoughts and efforts-their very worth as citizens-according to a criterion barred to the Government by history and the Constitution." Id., at 912 .... Such stereotyping can only "cause[] continued hurt and injury," Edmonson, 500 U.S., at 631, contrary as it is to the "core purpose" of the Equal Protection Clause, Palmore, 466 U.S., at 432."..."tremendous harm inflicted [by use of derogatory racial stereotyping].... See Cooper v. Aaron, 358 U.S. 1, 16 (1958) (following Brown, "law and order are not here to be preserved by depriving the [so-called Negro; Black or African American people] of their constitutional rights"). of their constitutional rights"). As the Court's opinions in these cases make

clear, ... racial stereotypes harm and demean individuals.")

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

44.     ABC Legal's racially discriminatory policy to "blackball", based on derogatory racial stereotypes, or race, presuming Black male litigant inferiority (promoting stigma; race as a 'negative'), retards progress and causes immediate (and *ongoing*) mental, emotional, dignity, and economic harm to Mr. Austin while demeaning him in violation of California's Unruh Act.  ABC LEGAL is purposely creating stigma by conduct that promulgates a type of separate and unequal anti-Black man customer racial caste system policy or practice highlighted as illegal in *Brown v. Board* (De Facto segregationist) that undermines human dignity and violates the Constitution, California's Unruh Act, and basic notions of human morality of right and wrong.

45.     As the 2023 Supreme Court opined on 6.30.23 in *303 Creative LLC v. Elenis*, addressing a similar state statute to California's Unruh, ABC LEGAL is purposely harming Mr. Austin's dignity interest which cannot be corrected simply because other businesses serve his needs, and they happen to be the only process server company he encountered, thus far, promulgating an anti-Black man customer, client, litigant, business invitee, racial caste system by its conduct of over 200+ refusals of service, or contract.  See para 23; 30-36

46.     ABC Legal is a public accommodation business and they are absolutely subject to Federal and State (Unruh Act) anti-discrimination mandates for all would-be customers, litigants, or business invitees (express or implied via advertisements).  In fact, both the majority and dissenting opinions ruled, and opined, that a public accommodation business like ABC Legal emphatically and absolutely owes Mr. Austin this duty, and is currently in violation of that duty by the admitted, repeated *ongoing* discriminatory conduct. See e.g. 303 Creative LLC

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

v. Elenis, No. 21-476 (U.S. Jun. 30, 2023); See para. 39  Because each of ABC

Legal's 200+ knowing, purposeful, and intentional discrete adverse acts (or

non-acts) to refuse service of process contracts are per se injurious, and because Mr.

Austin took such pains to escalate to the highest company officers with them

sanctioning the illegal conduct instead of correcting, their malice, and intentionality

requires not just statutory damages ($4,000 each (x200+) assumed as per se

injurions) but treble damages for intentional, ongoing, willful and malicious

misconduct as California Jury Instructions make clear ($2,400,000.00+)  See Civ.

Code, §§ 51, 52(a);CACI (Jury Instructions) 3067.Unruh Civil Rights Act - Damages:

> ("If the only claim is for statutory damages of $4,000 (see Civ. Code, § 52(a)), this instruction is not needed. (See Koire v. Metro Car Wash (1985) 40 Cal.3d 24, 33 [219 Cal.Rptr. 133,707 P.2d 195] [Unruh Act violations are per se injurious; Civ. Code, § 52(a)provides for minimum statutory damages for every violation regardless of the plaintiff's actual damages]; see also Civ. Code, § 52(h) ["actual damages" means special and general damages].") See also e.g. Pizarro v. Lamb's Players Theatre (2006) 135 Cal.App.4th 1171, 1174 ("The objective of the [Unruh] Act is to prohibit businesses from engaging in unreasonable, arbitrary or invidious discrimination. [Citation.] Therefore, the [Unruh] Act applies not merely in situations where businesses exclude individuals altogether, but also where treatment is unequal."). See e.g. See Civ. Code, § 51.5 (No business establishment of any kind whatsoever shall discriminate ... or blacklist, refuse ...sell to...any person in this state on account of any characteristics listed ... in "relationships similar to the proprietor/customer relationship")

47.    ABC Legal displayed malicious discriminatory animus and *intent* evidenced

in conduct; Its use of *pre-text* that can plainly be shown as false and lacking *any*

credibility and violates the face of the 13th, 14th Amendments, 42 USC 1981 and

Unruh.  (See para. 1-17)  ABC Legal has a legal duty to act, make settlement

contracts,  and serve Mr. Austin's settlement contract needs, in a

non-discriminatory manner , as a California Business Invitee-Litigant who abided

by all ABC Legal publicly listed policies- procedures, and more importantly State

and Federal law instructing standards of care, as a self Represented litigant,

customer, and severely injured Black male business invitee.  (as well as make

corrections once Mr. Austin logged 1, let alone 200+ complaints-attempts at

service-contract; as liability can attach for failing to prevent discrimination)  See

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

e.g. Trujillo v. N. Cnty. Transit Dist., 63 Cal.App.4th 280, 289, 73 Cal.Rptr.2d 596

(1998)("liability can arise for failing to take necessary steps to prevent

discrimination.. where discriminatory conduct .. took place and was not prevented.")

48.     Because Process Server Companies (ABC Legal) are held in the public trust

and used by litigants-customers when people are exercising their Constitutional

Rights (e.g. 13th; 14th Amend.) they are held to a higher standard, have expressly

stated precisely defined duties to serve litigants, with their non-discrimination

mandates against use of derogatory racial stereotypes, or 'negative' use of race,

under Unruh infused into their precisely statutorily defined (and mandated)

standards of care.  See e.g. Pizarro v. Lamb's Players Theatre (2006) 135

Cal.App.4th 1171, 1174:

("The objective of the [Unruh] Act is to prohibit businesses from engaging in unreasonable, arbitrary or invidious discrimination. [Citation.] Therefore, the [Unruh] Act applies not merely in situations where businesses exclude individuals altogether, but also where treatment is unequal.")

See also e.g. Javorsky v. Western Athletic Clubs, Inc., 242 Cal. App. 4th 1386,

1394–95 (2015)

(citing Sargoy v. Resolution Trust Corp., 8 Cal. App. 4th 1039, 1049 (1992)) ("The Cohn court explained that the type of unreasonable, arbitrary or invidious discrimination against which the Unruh Act was designed to protect "is present where the policy or action "'emphasizes irrelevant differences ....' or perpetuates any irrational stereotypes. [Citations.] The State of California has a legitimate interest in eradicating this type of discrimination because of the negative impact such prejudice has on society.")

See e.g. Sunrise Country Club Assn. v. Proud (1987) 190 Cal.App.3d 377, 381 [ 235

Cal.Rptr. 404].)

("unreasonable, arbitrary, or invidious .... discrimination is present where the policy or action .... perpetuates any irrational stereotypes.)

49.     ABC Legal is a California licensed process server business, and thus charged

with operating in the public trust, with an even higher expectation level under

Unruh Act especially as combined with the Constitutional (e.g. Due Process; 13th &

14th Amend, Equal Protection, 1981), and statutory precisely defined standards of

care for process servers; See also e.g. Brennon B. v. Superior Court 57 Cal.App.5th

367 (Cal. Ct. App. 2020) (The "public service doctrine" imposed on occupations and

enterprises "providing a particular product or service to the community . . . attached

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

to them certain obligations," including "the duty to serve all customers ... without discrimination." (Tobriner & Grodin, supra, 55 Cal.L.Rev. at p. 1250.))  See also Leach v. Drummond Medical Group, Inc. 144 Cal.App.3d 362 (Cal. Ct. App. 1983)

> ("Defendant Drummond Medical Group, Inc. is an enterprise affected with a public interest. As such the defendants are under a common law duty to serve all customers without discrimination. The defendants' arbitrary refusal to serve the plaintiffs is in violation of that common law duty." The Supreme Court in In re Cox, supra, 3 Cal.3d 205, discussed the historical background of the Unruh Civil Rights Act).

50.    Unruh's common law, and statutory, predecessors tracing back to the late 1800s of California's Supreme Court jurisprudence outlaw ABC Legal's displayed anti-Black facially discriminatory policy for businesses that operate in the public trust which makes ABC Legal's *ongoing* conduct toward Mr. Austin even more violative in 2024 (i.e. *absolute refusal of precisely defined service because of race, or derogatory racial stereotypes*).  See Pleasants v. North Beach & Mission R.R., 34 Cal. 586 (1868). See also Turner v. North Beach & Mission R.R., 34 Cal. 594 (1866). See also Willis v. McMahan, 89 Cal. 156, 26 Pac. 649 (1891).  California has a long history of ruling against this kind of anti-Black racially discriminatory policy that violates what is now Unruh (or its predecessors) on its face.  California's Supreme Court's *In re Cox* ruling traces and highlights this history. See e.g. In re Cox, 3 Cal.3d 205, 205 (Cal. 1970):

> ("The early common law decisions regarded certain enterprises as 'public' or 'common' callings, or, to use a later phrase, 'affected with a public interest.' These undertakings 'held themselves out' as providing a particular product or service to the community. (Arterburn, The Origin and First Test of Public Callings (1927) 75 U.Pa.L.Rev. 411, 418--428; Hamilton, Affectation with Public Interest (1930) 39 Yale L.J. 1089, 1098--1099; see Civil Rights Cases (1883) 109 U.S. 3, 26, 37--42, 3 S.Ct. 18, 27 L.Ed. 835 (dissenting opinion of Harlan, J.); Klim v. Jones (N.D.Cal.1970) 315 F.Supp. 109, at pp. 118, 119 (Levin, J.). The common law attached to these enterprises 'certain obligations, including--at various stages of doctrinal development--the duty to serve all customers on reasonable terms without discrimination and the duty to provide the kind of product or service reasonably to be expected from their economic role. Such occupations as blacksmith, food seller, veterinarian, and tailor, as well as those of common carrier and innkeeper were probably included in that category.' (Tobriner & Grodin, The Individual and the Public Service Enterprise in the New Industrial State (1967) 55 Cal.L.Rev. 1247, 1250 (fns. omitted); see J. Story, Commentaries on the Law of Bailments (9th ed. 1878) § 508 at p. 483; cf. Bell v. Maryland (1964) 378 U.S. 226, 286, 296--304, 84 S.Ct. 1814, 12 L.Ed.2d 822 (concurring opn. of Goldberg, J.); Lombard v. Louisiana (1962) 373 U.S. 267, 274, 275--276, 83 S.Ct. 1122, 10 L.Ed.2d 338 (concurring opn. of Douglas, J.); Greenberg v. Western Turf Ass'n (1905) 148 Cal. 126, 128; Greenberg v. Western Turf Ass'n (1903) 140 Cal. 357, 362--363; Willis v. McMahan (1891) 89 Cal. 156; Turner v. North Beach & Mission R.R. (1868) 34 Cal. 594, 600; Pleasants v. North Beach & Mission R.R. (1868) 34 Cal. 586,9)).

> (The California Legislature, in 1897, enacted these common law doctrines into the statutory predecessor of the present Unruh Civil Rights Act. (See Klein, The California Equal Rights Statutes in Practice (1958) 10 Stan.L.Rev. 253, 255--258.) The 1897 act provided: 'That all citizens within the jurisdiction of this State shall be entitled to the

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

full and equal accommodations, advantages, facilities, privileges of inns, restaurants, hotels, eating-houses, barber-shops, bath-houses, theaters, skating-rinks, and all other places of public accommodation or amusement, subject only to the conditions and limitations established by law and applicable alike to all citizens.' (Stats.1897, ch. 108, p. 137, § 1.) A 1919 amendment broadened the act to encompass public conveyances. (Stats.1919, ch. 210, p. 309, § 1.) In 1923 the Legislature extended the act's coverage to 'places where ice cream or soft drinks of any kind are sold for consumption on the premises.' (Stats.1923, ch. 235, p. 485, § 1.) Following these initial amendments which evidenced the coverage of the Civil Rights Act to include more places of public accommodation, two cases arose which required this court to determine whether the Civil Rights Act prohibited only discrimination on grounds of race, religion, and national origin or prohibited all arbitrary discrimination. In Orloff v. Los Angeles Turf Club (1951) 36 Cal.2d 734, we held that the Civil Rights Act barred the manager of a race track from expelling a patron who had acquired a reputation as a man of immoral character. We noted that 'Under our institutions the freedom to pursue the declared right (to public accommodations) on an equal basis is just as precious as many other freedoms and rights. The exercise of the power of its denial, being a restraint on a personal right, is circumscribed by the same constitutional safe-guards of equal protection and due process as are restraints under penal laws.' (36 Cal.2d at p. 739, 227 P.2d at p. 453.) Hence, the court concluded that a racecourse constituted 'a place of public entertainment,' which is 'so far affected with a public interest that the state might, in the interest of good order and fair dealing, require the proprietor to recognize its own tickets of admission.' (36 Cal.2d at p. 739, 227 P.2d at p. 453.)).

(Later, in Stoumen v. Reilly (1951) 37 Cal.2d 713, we recognized the right of homosexuals to obtain food and drink in a bar and restaurant: 'Members of the public of lawful age have a right to patronize a public restaurant and bar so long as they are acting properly and are not committing illegal and immoral acts; the proprietor has no right to exclude or eject a person 'except for good cause,' and if he does so without good cause he is liable in damages. (See CIV.CODE, SS 51, 52.)' (37 CAL.2D AT P. 716, 234 P.2D AT P. 971; see Tarbox v. Board of Supervisors (1958) 163 Cal.App.2d 373, 378.) Thus, in Stoumen and Orloff this court clearly established that the Civil Rights Act prohibited all arbitrary discrimination in public accommodations. Former Civil Code section 52 read as follows: 'Whoever denies to any citizen, except for reasons applicable alike to every race or color, the full accommodations, advantages, facilities, and privileges enumerated in section fifty-one of this code, or who aids, or incites, such denial, or whoever makes any discrimination, distinction or restriction on account of color or race, or except for good cause, applicable alike to citizens of every color or race whatsoever, in respect to the admission of any citizen to * * * (any place of public accommodation * * *) is liable in damages in an amount not less than one hundred dollars. * * * ' (Stats.1923, ch. 235, p. 485, § 2.) The Legislature revised section 52 in 1959 to read: 'Whoever denies, or who aids, or incites such denial, or whoever makes any distinction or restriction on account of color, race, religion, ancestry, or national origin, contrary to the provisions of Section 51 of this code, is liable for each and every such offense for the actual damages, and two hundred fifty dollars ($250) in addition thereto, suffered by any person denied the rights provided in Section 51 of this code.' (Stats.1959, ch. 1866, p. 4424, § 2.) The initial words: 'Whoever denies, or aids, or incites Such denial' (italics added), clearly refer to all the arbitrary discriminations forbidden by section 51--including but not limited to race, religion, ancestry, color, or national origin. Moreover, our decisions, in Orloff v. Los Angeles Turf Club (1951) 36 Cal.2d 734, and Stoumen v. Reilly (1951) 37 Cal.2d 713, which forbade all forms of arbitrary discrimination, relied upon Civil Code section 52 only on the question of damages and on section 51 for the significant declaration of equal rights to public accommodations. In the late 1950's, however, the Legislature became concerned that Courts of Appeal, narrowly defining the kinds of businesses that afforded public accommodation, were improperly curtailing the scope of the public accommodations provisions. (See Reed v. Hollywood Professional School (1959) 169 Cal.App.2d Supp. 887, 890; cf. Swann v. Burkett (1962) 209 Cal.App.2d 685, 690--691, 26 Cal.Rptr. 286; Colley, Civil Actions for Damages Arising out of Violations of Civil Rights (1965) 17 Hastings, L.J. 189, 194--195; Horowitz, The 1959 California Equal Rights in 'Business Establishments' Statute--A Problem in Statutory Application (1960) 33 So.Cal.L.Rev. 260, 261.) Accordingly, the Legislature, enacting the Unruh Act, modified the mandate that 'All citizens * * * are entitled to the full and equal accommodations' and broadened its scope so that it read thereafter: 'All citizens  * * * are free and equal, and no matter what their race, color, religion, ancestry, or national origin are entitled to the full and equal accommodations * * * in all business establishments of every kind whatsoever'. As noted infra, the Legislature in 1961 substituted 'all persons' for 'all citizens' to further broaden the applicability of section 51. (Stats.1961, ch. 1187, p. 2920, § 1.)   Former Civil Code section 53 read as follows: 'It is unlawful for any corporation, person, or association, or the proprietor, lessee, or the agents of either, of any opera house, theater, melodeon, museum, circus, caravan, race course fair, or other place of public amusement or entertainment, to refuse admittance to any person over the age of twenty-one years, who presents a ticket of admission acquired by purchase, or who tenders the price thereof for such ticket, and who demands admission to such place. .... the Legislature obviously intended to encompass within section 51 all of the enterprises theretofore governed by section 53 and to subject proprietors of all businesses serving the public to the same requirement that there be no arbitrary exclusion of would-be patrons.")

51.     Similar to *Hutson*, ABC Legal admitted in word, and deed, that ABC Legal

was (and is) operating by way of derogatory racial stereotypes, and using "race as a

negative" for Black male litigants with conduct saying no matter what Mr. Austin

was not being served, or made service of process contract (i.e. blackballed) despite

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

over 200+ diligent attempts, and proactive communication.  See also e.g. Hutson v.

Owl Drug Company, 79 Cal.App. 390, 391-92 (Cal. Ct. App. 1926)

> "[In 1926, Los Angles, Under California law] Tucker remarked in a loud voice: "What did you serve the n\*gg\*r for? I wouldn't have served her. She could have set there until tomorrow, [and still wouldn't have gotten served]"....
> ....established the fact that respondent was not accorded the same accommodation applicable alike to all citizens. Section 51 of the Civil Code provides: "All citizens within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities and privileges ... section 52 of the same code provides: "Whoever denies to any citizen, except for reasons applicable alike to every race or color, the full accommodations, advantages, facilities and privileges enumerated in section fifty-one of this code, or who aids or incites such denial, or whoever makes any discrimination, distinction or restriction on account of the race or color . . . for each and every such offense is liable in damages,"... that said employee Tucker did refuse to serve plaintiff Lela Hutson....As conclusion of law the court concludes that plaintiffs are entitled to recover."

52.    As *SB 600 Legislative's History* in 2015-2016 CA Legislative Session (Now

Amended Civ Code Sec. 51, 52), the Supreme Court of California's 2019 *White vs.*

*Square,* and California's Appellate Court's *Davis v. Krivacic* makes clear, outright

refusal of service, or exclusion, because of race, or derogatory stereotypes, is not

required to trigger Unruh Act liability (drawing-relying heavily on well settled CA

precedent ruling against anti-Black discriminatory animus).  Nor does an aggrieved

victim of discrimination need to object to, or challenge, the discriminatory policy,

practice or procedure, (*at all, let alone 200+ times as Mr. Austin did here*) for the

discriminatory organization to incur legal liability.  However, ABC Legal's conduct

takes the facially discriminatory proverbial cake as it made clear its discriminatory

intent, and animus,(violating the face of the statute) with over 200+ separate

instances (as unequal  service or offering services by discriminatory, or unequal

methods, can too trigger liability) See e.g. Winchell v. English, 62 Cal.App.3d 125,

128 (Cal. Ct. App. 1976):

> ("Statutes such as the Act are declaratory of the state's public policy against racial discrimination whether it be private action, or public action, which is involved. ( James v. Marinship Corp. (1944) 25 Cal.2d 721, 740 [ 155 P.2d 329, 160 A.L.R. 900].) "Discrimination on the basis of race or color is contrary to the public policy of the United States and of this state.")

See e.g. SB 600 (Now Amended Civ Sec. 51, 52)  Unruh Civil Rights Act (Unruh Act)
to expressly prohibit discrimination by business establishments (2015-2016):

> 07/01/15- Assembly Floor Analysis; 06/27/15- Assembly Judiciary; 05/27/15- Senate Floor Analyses; 05/15/15- Senate Floor Analyses; 05/11/15- Senate Judiciary (""Background on the Unruh Act. Civil Code Section 51, the Unruh Civil Rights Act, is considered one of the cornerstones of antidiscrimination law in California, and specifically prohibits business establishments from denying equal accommodations and services on the basis of sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, or sexual orientation. The true scope of protection under the Unruh Act is actually even broader than these categories because the California Supreme Court has consistently interpreted the Unruh Act in an expansive way, holding that it is meant to cover all arbitrary and intentional discrimination by business establishments. ...........In a landmark 1970 case, the Court held that the Unruh Act forbids a business establishment that is generally open to the public from

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

arbitrarily excluding a prospective customer (In re Cox 3 (1970) Cal.3d 205). In a detailed analysis of the Unruh Act, the Court determined the "past judicial interpretation of the act, and the history of legislative action that extended the statutes' scope, indicate that identification of particular bases of discrimination – color, race, religion, ancestry, and national origin... is illustrative rather than restrictive. (Emphasis added.) Although the legislation has been invoked primarily by persons alleging discrimination on racial grounds, its language and its history compel the conclusion that the Legislature intended to prohibit all arbitrary discrimination by business establishments." (Id. at p. 216.)")

## See e.g. Davis v. Krivacic, No. C089084, at *5-7 (Cal. Ct. App. Aug. 26, 2020):

(" In enforcing the Act, courts must consider its broad remedial purpose and overarching goal of deterring discriminatory practices by businesses. ... the Act applies not merely in situations where businesses exclude individuals altogether, but also "where unequal treatment is the result of a business practice" (Koire) ... offering price discounts on an arbitrary basis ... (Pizarro...) "...found violations ...when [B]lacks were allowed to enter business establishments but were restricted to certain portions of the premises. (.. Jones ..) ... restricted to seating in segregated section]; Suttles .... admitted to racetrack but denied clubhouse seating])...."In Hutson v. The Owl Drug Co. (1926) .... plaintiff 'was not accorded the same accommodations, advantages, facilities and privileges' ....The same can be said here. ... Krivacic embarrassed and defamed him when Davis picked up tickets from the Kings's will call booth. ...Our focus is on the treatment of Davis at the publicly accessible will call booth, ...Davis ... was engaged in the lawful conduct ... Krivacic's embarrassing and defamatory treatment, directed at Davis alone, was designed to deter Davis from accessing the will call booth and Kings's games for lawful purposes. This is similar to Hutson, ... he was the subject of treatment no other person experienced, Davis has alleged unequal services for purposes of the Act. (§ 51.)")

## See also e.g. White v. Square, Inc., 7 Cal.5th 1019, 1026-27 (Cal. 2019):

("In Koire , a male ... asked to be charged the same discount prices as were offered to females. These businesses refused his request." ... in response to a radio advertisement by a nightclub ... plaintiff "went to [the nightclub] and requested [same] admission [price] which was refused...held that "[t]he Act's proscription is broad enough to include within its scope discrimination in the form of sex-based price discounts." ... In Angelucci , four men sued a private club under the Unruh Civil Rights Act for charging them higher admission fees than it charged to women. ... held that nothing in the text of the Act requires that "before a legal action may be filed, the victim of the asserted discrimination must have demanded equal treatment and have been refused." ... Such a requirement "would be inconsistent with the purpose of the Act to 'eradicate' or 'eliminate' arbitrary, invidious discrimination in places of public accommodation.... If businesses are held not to violate the Act or inflict injury unless they are challenged by a patron, their ordinary practice may revert to discrimination, with special exceptions being made for individuals who happen to challenge the practice." ( Id. at p. 169, 59 Cal.Rptr.3d 142, 158 P.3d 718.) We declined to read the Act in a manner that would leave businesses free to discriminate "so long as these establishments agree to provide equal treatment to those customers knowledgeable and assertive enough to demand it."...We also observed that the Act must be understood to afford redress to "persons discriminated against on an occasion when there was no one present to receive and answer a demand for equal treatment (for example, persons encountering, as they did in past decades, racially segregated drinking fountains or restroom facilities at an unattended structure).")

## 3. False Advertising Section 43(a) of the Lanham Act;    ABC Legal is falsely advertising, an essential and material component of its services, to Black male business invitees, customers-clients, and litigants in California that it serves all legally filed litigants service of process legal paperwork in accordance with the US, and California, Constitution (I.e. 14th Amend.) when in fact it promulgates an anti-Black male segregationist racial caste system that violates the face of the statute and lies to customers, litigants-business invitees.

53.     ABC Legal is falsely advertising to Black male business invitees,

customers-clients, and litigants in California that it serves all legally filed

litigants service of process legal paperwork in accordance with the US, and

California, Constitution (highlighting the 14 Amendment's promise of Equal

Protection in their advertisements; www.abclegal.com /states/california

'California Service of Process The Golden State deserves the golden standard

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

in due process – learn how ABC Legal helps carry out the 14th Amendment for Californians') when in fact ABC Legal discriminates on the face of the Constitutional Amendment, against Black males who are the only class of persons expressly listed as beneficiaries of the 13th, 14th or 15th Amendments. See e.g. Burton, 365 U.S. at 725, 81 S.Ct. at 861(the Court held that a private restaurant …violated the fourteenth amendment when it refused to serve [B]lack customers.") See also Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 777 (1992) (""(Lanham Act violation when] false description or representation" in connection with any goods or services.")

54.    Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair or deceptive acts or practices." Section 12 of the FTC Act, 15 U.S.C. § 52, prohibits the dissemination of any false advertisement that is likely to induce the purchase of … services (including ABC Legal's process service). A 'false advertisement' is any advertisement that is "misleading in a material respect." 15 U.S.C. § 55(a)(1). See Logan v. Meta Platforms, Inc. 22-cv-01847-CRB (N.D. Cal. Oct. 25, 2022)(Section 1125(a) of the Lanham Act permits … false advertisement [claims] under § 1125(a)(1)(B).) See e.g. Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 778 (1992) (" False advertising meant representing that goods or services possessed characteristics that they did not actually have [i.e. advertising 14th Amend. Compliant non-discriminatory service while discriminating against target class of that Const. Amend.; Black men.")

55.    As the Supreme Court says in *303 Creative LLC v. Elenis* it is illegal to advertise or hang signs saying "No Blacks [allowed]…" it is also illegal, under

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

the Latham Act, to falsely advertise that your service (*inextricably tied to the 13th, 14th, and 15th Amendments*) provides non-discriminatory service of process [as an essential material element of that service] when in fact ABC Legal's service is facially discriminatory (violates the face of statues) toward the express intended beneficiaries of the 13th, 14th, and 15th Amendments, Black men.  See e.g. www.abclegal.com/states/california (California Service of Process The Golden State deserves the golden standard in due process – learn how ABC Legal **helps carry out the 14th Amendment** for Californians.)  See e.g. Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 779 n.4 (1992) ("The deleterious effects of false advertising were described by one commentator as follows: [A] campaign of false advertising may completely discredit the product of an industry, destroy the confidence of consumers and impair a communal or trade goodwill. Less tangible, but nevertheless real, is the injury suffered by the honest dealer who finds it necessary to meet the price competition of inferior goods [or services], glamorously misdescribed by the unscrupulous merchant.")

56.    ABC Legal's advertisements constitute false advertising at its apex, and hypocrisy at its pinnacle; This simultaneous, and coexistent, discriminatory and false advertising pattern or practice from a Legal Service company (specializing in service of process) violates several statutes including the Latham Act.  ABC Legal's *ongoing* conduct expressly fails their duty of non-discriminatory service, *and* simultaneously advertises the exact opposite to mislead customers, litigants, or business invitees with material

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

misstatements of facts regarding essential components of their service offering (they claim to serve everyone according to 14th Amend., but outright refuse Black men service of process contracts), only to in turn stigmatize, infringe on Black men's dignity interests when they patronize ABC Legal, with their conduct displaying the material falsity of their advertising in their ongoing conduct toward Mr. Austin ((i.e. ABC Legal cannot both practice non-discrimination in accord with the 13th-15th Amendments and then discriminate against the expressly listed protected class of that part of the Constitution; Black men)  See para 1-48

57.     Because process service, in a lawfully filed case, in Federal Court, by a Self Represented Black male litigant, is in itself an exercise of Constitutional rights non-discriminatory service, as advertised, becomes an essential part of the process servers service offerings.  See para 1-48.  ABC Legal admits this, publicly advertising its foundational belief in the 14th Amend. (which explicitly protects Black men's anti-discrimination rights) as part of its service offerings for Californians as the Gold standard.  This material misrepresentation is not mere puffery, but impugns the fundamental nature or quality of ABC Legal's service to Black male litigants-business invitees and simultaneously violates the fundamental framework of the legal system, and materially misrepresents its entire business model, though exclusions or outright refusal of service based on derogatory racial stereotypes, or race, which is illegal under the Latham Acts false advertising provisions.

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

58.    ABC Legal knows that it is falsely advertising this material [Constitutionally required] quality of its services as they have received over 200+ formal complaints and attempts to make contract or receive service from Mr. Austin alone.  Despite this it has refused to correct this ongoing material misrepresentation to the public, and specifically Black male litigants, business invitees, customers-clients whom they advertise to, and claim to serve in those advertisements (but in reality do not and promulgate or propagate a segregationist anti-Black male racial caste stigma, policy and practice through their ongoing conduct showing malice, reckless, outrageous and conscious disregard of certain harm to Mr. Austin's dignity [stigma], emotional-mental well-being, personhood and foundational rights - not to mention financial harms).  See Cooper Industries v. Leatherman Tool Group, 532 U.S. 424, 429 (2001) (""Has [Plaintiff] shown ... that by engaging in false advertising ..., [Defendant] acted with malice, or showed a reckless and outrageous indifference to a highly unreasonable risk of harm and has acted with a conscious indifference to [Plaintiff]'s rights?"... Because it answered this question in the affirmative, the jury was instructed to determine the "amount of punitive damages ... The jury awarded $4.5 million")

**4. Deceit, False Promises, Misrepresentations, Omissions and Actual Fraud (with Malice); ABC Legal is deceiving Black male business invitees, clients-customers, and litigants (I.e. Mr. Austin) in California that it serves all legally filed litigants service of process legal paperwork in accordance with the US, and California, Constitution, and then further deceiving with pretext (lies) for promulgating and attempting justify an anti-Black male segregationist racial caste system that violates the face of the statutes and lies to customers, litigants-business invitees.**

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

59.    ABC Legal holds itself as a law abiding California business, but

deceived Mr. Austin as in practice they routinely violate the U.S.

CONSTITUTION, California Constitution, 42 USC 1981, Unruh Act, Civil

Rights Acts with regard to public accommodation businesses, especially as it

relates to Black male litigants, customers, and clients through *ongoing* willful

and disparate treatment that violates the face of those respective laws.  ABC

Legal deceives, and makes material misstatements of facts, to Mr. Austin as

a Black male business invitee, customer-client, and litigant in California that

it serves all legally filed litigants service of process legal paperwork in

accordance with the US, and California, Constitution (highlighting the 14

Amendment's promise of Equal Protection in their advertisements; www.abc

legal.com /states/california 'California Service of Process The Golden State

deserves the golden standard in due process – learn how ABC Legal helps

carry out the 14th Amendment for Californians').  In actuality ABC Legal

discriminates on the face of the Constitutional Amendment, against Black

males who are the only class of persons expressly listed as beneficiaries of the

13th, 14th or 15th Amendments.  See e.g. Burton, 365 U.S. at 725, 81 S.Ct. at

861(the Court held that a private restaurant …violated the fourteen- th

amendment when it refused to serve [B]lack customers."); See para. 1-54

60.    ABC Legal lies about its reasoning for discriminatory acts (pre-text) &

has no legitimate justification for its ongoing discriminatory conduct.  But,

instead of confronting the issues continues in a path of pre-text, and deceit

despite Mr. Austin's 200+ attempts, and formal complaints.  See para. 1-46

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

Outside of discriminatory pretext (lies) ABC Legal has no legal reason to not

serve Mr. Austin.  Beside discriminatory animus because he is Black male

customer, not only violating the US and California Constitutions, as well as

42 USC 1981, Unruh, on their face, ABC Legal has no explanation for their

conduct leading them to outright deceit, knowingly false assumptions.

Because of the nature of the business relationship whereas ABC Legal is

100% in control of their serving process Mr. Austin is forced to rely on their

misrepresentations and omissions although he continues to challenge,

attempt and formally complain of the illegal conduct.  See para. 1-52

61.    Mr. Austin was not only cheated out of invaluable dignity interests (*as*

*the 2023 Supreme Court highlights in 303 Creative LLC v. Elenis*), time,

energy and money-resources expended on 200+ attempts at getting contract

as well as 200+ complaints, but also cheated out of the concrete differences in

price for more expensive process servers whereas they likely offered cheaper

prices for fundamentally the same service (as ABC Legal touts its price as

one of the least expensive, or most inexpensive).  See para. 1-48

**5. Negligence.    ABC Legal is negligent in its duties a. to serve Mr. Austin's
service of process needs as a business invitee in California, generally , b in
its duties under sec. 1981 to serve in an non-discriminatory manner c. in
its duties under Unruh to serve Californians in a non-discriminatory
manner d. in its duties to not falsely advertise to Mr. Austin e. in its
leadership's and company's officer's duties to properly manage, supervise
and correct its agents instead of displaying further discriminatory animus
through deliberate indifference and even scant want of care.**

62.    ABC Legal is negligent, a. in its duties to serve the public in a non-

discriminatory manner, b. in its duties to correct its discriminatory practices when

formal complaints made, c. in its duties to not deceive business invitees, d. in its

duties under Latham Act to not falsely advertise, e. in its duties to manage, control

and monitor its agents when they act illegally, f. in its duties to facilitate and

protect Due Process, Equal Protection and Equal Access to Justice System as it

holds itself out to the public as doing, g. in its duties serve all litigants legally filed,

and independently verified, service of process legal paperwork.  See para. 1-56

63.    ABC Legal knows, and publicly admits, (*because their business model is based*

*on this fact*) to commence a legal proceeding in Federal Court (and represent

oneself) service of process is mandatory to establish jurisdiction.  When ABC Legal

refused to [serve] Mr. Austin's legally filed, independently verified, legal papers

(especially in a discriminatory manner) they failed their duty of care owed him as a

business invitee-litigant.  See e.g. U.S. Commodity Futures Trading Comm'n v.

Paron Capital Mgmt., LLC, No. 11-4577, 2012 WL 1156396, at *2 (N.D. Cal. Apr. 6,

2012) (citing Omni Capital Int'l v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987))(A

federal court lacks personal jurisdiction over a defendant if service of process is

insufficient.)

64.    Because Access to Courts, Equal Protection, and Due Process are so

dependent on service of process businesses (or process servers), they qualify as a

public accommodation businesses and its failure to serve all litigants legally filed,

and independently verified service of process paperwork, equally, fails its duties to

facilitate and protect Due Process, Equal Protection and Equal Access to Justice

System (as it holds itself out to the public as doing).  See Fed. R. Civ. P. 4.  See also

e.g. Kappel v. Bartlett 200 Cal.App.3d 1457 (Cal. Ct. App. 1988) (citing Slaughter v.

Legal Process Courier Service 162 Cal.App.3d 1236 (Cal. Ct. App. 1984))

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

(that improper service of process, combined with subsequent falsification of an affidavit, could result in a default judgment against the person served and in emotional as well as financial injury to him. In addition, the **policy of encouraging process servers to perform their function responsibly is a sound one, justifying imposition of a legal duty of care .... The judicial system relies upon process servers to ensure that the due process rights ... are protected, and [protect against] potentially severe consequences ... likely to result [when process servers fail their duty of care].**)

See also e.g. Brennon B. v. Superior Court 57 Cal.App.5th 367 (Cal. Ct. App. 2020)
(The "public service doctrine" imposed on occupations and enterprises "providing a particular product or service to the community . . . attached to them certain obligations," including "the duty to serve all customers ... without discrimination." (Tobriner & Grodin, supra, 55 Cal.L.Rev. at p. 1250.))

65.     When ABC Legal advertises 14th Amendment compliance, but then

discriminates against the very class of persons expressly listed as beneficiaries of

the 14th Amendment it fails its duties not to lie (deceive), and not to falsely

advertise to customers-business invitees. See para. 1-54  When that Black male

customer-business invitee, Mr. Austin, makes the first formal complaint, let alone

the 200+ following complaints, for ABC to correct this discriminatory policy, and

practice, he personally experienced their failure to correct immediately, and

subsequently fails its duty to correct its discriminatory practices when formal

complaints are made (and sanctions the illegal conduct). See para. 1-48  The fact

that Mr. Austin, the victim of discrimination (outright refusal of service because

Black man) had to complain at all, and then 200+ more times, and keep attempting

to get non-discriminatory service he was entitled to from the beginning points to

ABC Legal's failure in its duties to properly train, manage, control and monitor its

agents. See e.g. Canton v. Harris, 489 U.S. 378, 390 (1989) Cited 15,842 times
("It may seem contrary to common sense to assert that a[n organization] will actually have a policy of not taking reasonable steps to train its employees. But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [organization] can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the [organization] is responsible, and for which the [organization] may be held liable if it actually causes injury")

See para. 1-46  Here, ABC Legal's multiple failed duties caused multiple types of

injuries and shows want of even scant care.

**RELIEF**

George Jarvis Austin, (Self-represented)
2107 Montauban Ct., Stockton, CA; 209.915.6304, georgejarvisaustin@gmail.com

66.    Mr. Austin's rights to contract and non-discriminatory service are being violated by ABC Legal under §1981, 13th, 14th Amend. and Unruh.  Mr. Austin was also falsely advertised to, deceived and experienced negligence without even a scant want of care by ABC Legal, between July 2022 and now (*over 200+ refusals of service; contract*), producing $10 Million Minimum Demand; INJUNCTIVE RELIEF to prevent-correct prospective violations of Due Process-Equal Protection by Susan Illston, Donna Ryu, Trina Thompson, Edward Chen, Richard Seeborg, Saundra Brown Armstrong, Maxine M. Chesney, Alex G. Tse, William Alsup, Edward J. Davila, Rita F. Lin & Yvonne Gonzales Rogers ongoing failure to protect Mr. Austin's rights (*only injunctive from these defendants; not damages*) & to correct *ongoing* refusals of service-contract from ABC Legal).  **Thus, in accord with FRCP Rule 38 Mr. Austin sues with demand for Jury Trial.** See FRCP Rule 38(a)(b): (*(a) ..The right of trial by jury as declared by the Seventh Amendment to the Constitution—or as provided by a federal statute—is preserved to the parties inviolate. (b) Demand.)* s/ **George Jarvis Austin.**